### State Bank of Nauvoo v. Edwin L. Lobdell et al.

1. TRUSTS—*How Abandoned or Abrogated.*—A trust can not be abrogated or merged in a new trust arrangement except by the consent of all of the *cestuis que trust.*

**Bill to Establish a Trust.**—Trial in the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Decree dismissing the bill for want of equity. Appeal by complainant. Heard in this court at the March term, 1898. Reversed and remanded, with directions. Opinion filed October 27, 1898.

Appellant exhibited its bill of complaint in the trial court, by which it alleged the existence of a trust in favor of

appellant and others, and the failure of appellee Lobdell, the trustee, to execute the trust, and, by way of relief, prayed for a decree establishing the trust and requiring an accounting and complete execution of the trust by the trustee. The facts set forth by the bill of complaint are substantially as follows: In 1893 T. W. Harvey and the T. W. Harvey Lumber Co. were indebted to certain firms and corporations, among whom was appellant, upon promissory notes to the amount of about $102,000. To secure the payment of this indebtedness Harvey and the Harvey Lumber Co. conveyed real estate in trust to E. L. Lobdell, one of the appellees. Afterward the creditors, thus secured, and Harvey and the Harvey Lumber Co. agreed, as the result of some negotiating, upon a settlement, whereby the real estate held by Lobdell through the deed of trust (excepting one piece known as the Prairie avenue property) should be conveyed absolutely to Lobdell by the Lumber Company and Mr. and Mrs. Harvey in full payment of the indebtedness referred to, all evidences of which should be surrendered by its creditors, and the property so received by Lobdell should be held and disposed of by him as a trustee, for the use and benefit of these creditors. Lobdell accepted the trust and received a conveyance of the property from the Harveys in the latter part of the year 1893. In accordance with this agreement, appellant and the other creditors surrendered their evidences of indebtedness to the Harveys. It is this trust which the bill of complaint seeks to have established and enforced.

Defendants (appellees) by their answer admitted the creation of this trust, as alleged, but averred that on or about December 20, 1893, all the trust arrangements referred to in the bill of complaint were abrogated by consent of all the parties interested therein, and that an association, called the Bankers' Land Association, was then formed by the creditors, who were the *cestuis que trust*, and that the formation of this association in effect created a new and different trust, which superseded the trust set up in the bill of complaint. The answer also averred that appellant had parted with all interest in the trust estate by sale, and had

no interest which would entitle it to the relief prayed. A hearing was had upon bill, answer and replication, and a decree entered dismissing the bill for want of equity. From that decree this appeal is prosecuted.

Scofield, O'Harra & Scofield, and Wheeler & Silber, attorneys for appellant.

Ullmann & Hacker, attorneys for appellees.

Mr. Justice Sears delivered the opinion of the court.

There is no controversy as to the fact that the trust sought to be enforced was created as alleged and that appellee Lobdell accepted it as trustee. The principal controversy between the litigants is as to whether this trust was afterward abandoned by all interested therein, and a new trust created in lieu thereof by the formation of the Bankers' Land Association. No question is raised, or could be, as to the plain proposition of law that this trust, the creation of which is admitted, could not have been abrogated or merged in the proposed new trust arrangement, except by the consent of all the *cestuis que trust*. It is undisputed that all the creditors interested agreed to the abandonment of the first trust and .the substitution therefor of the Bankers' Land Association trust, excepting the appellant.

In examining the evidence to determine as to whether appellant did in fact consent to this arrangement, as averred by appellees and denied by appellant, we find that all the evidence relating thereto is such as discloses the transactions had at one creditors' meeting held at the Union League Club on January 25, 1894, and correspondence by mail subsequent thereto.

At a meeting of creditors on January 25th, the plan of forming the Bankers' Land Association was submitted to appellant's cashier and the other creditors. The details of the plan are set forth in the proposed articles of association. They provided, among other things, that the creditors were to receive shares of stock in the association in lieu of their

respective interests in the trust estate, held by trustee Lobdell; each shareholder was to be subject to assessments, as provided, for the carrying on of the association; power to lease, sell, exchange, mortgage, etc., the lands constituting the trust estate was to be vested in the trustee, together with the president and secretary of the association; successors in trust were appointed to succeed the trustee, and various other details as to management were determined.  To the creation of this second trust and the merger of the original trust in it, the appellant, at the time of this meeting, viz., January 25, 1894, refused to consent.  Rupp, the cashier of appellant, who attended this meeting as its representative, testified in part as follows:

" I was particularly instructed by our board of directors not to sign the proposed articles of association before returning home.  I did not sign the articles at that meeting.  I did not vote in favor of forming the land association.  I refused to sign the articles; I objected to the formation of the land association.  I stated to Mr. Lobdell personally that I had instructions from our board of directors not to sign the articles of the land association, and not to agree to them before returning home.  Mr. Lobdell stated this to the meeting, and said that if there were any more such as myself present, it was of no use to go on with the matter.  He said it would be necessary for all of the members to agree before we could go on.  I told Mr. Lobdell that the others could sign if they knew what they were doing.  I told him it would be easier to get the signatures of a dozen now than of one later on, but that I for one must have time to present the matter to the board of directors.  A resolution was offered and carried giving the complainant five days in which to consider the matter.  Previous to this resolution there was a motion or resolution made as to disregarding the complainant's claim; it was a motion or resolution to that effect, I can not say positively which."

By letter of January 31, 1894, appellant informed the trustee that it would not sign the articles of agreement of the Bankers' Land Association.  Shirk, a witness for appellees, testified:

" Q.   Did Mr. Lobdell at that meeting get up and state
that Mr. Rupp had told him in substance that he had no
authority to sign the articles of association, and would not
agree to them until he returned home ?

" A.   I think he made some statement at some meeting.
I don't think that was at the first meeting—think it was at
a subsequent meeting.   I do not remember as to whether it
was after the adjournment of the first meeting and at a
meeting when Mr. Rupp was not present in the evening.
But I heard nothing said by Mr. Lobdell or by Mr. Rupp
at the first meeting."

Cross-examination :

" Mr. Lobdell did call the attention of the meeting, at
some time when I was present, to the fact that Mr. Rupp
had stated he was not authorized to sign the articles of the
land association.   I am quite sure it was not the first
meeting, because, as I now remember it, that was unani-
mous."   *   *   *   Thereupon the court took up the exami-
nation, and the witness, as the result of several questions,
testified :   " The statement made by Mr. Lobdell that Mr.
Rupp wanted to consult with his directors before agreeing
to the formation of the land association, was made, I think,
at the same meeting at which the vote was taken."

Edwin L. Lobdell, a witness for the defendants, testified
as follows :

" I was at the meeting of January 25, 1894, when the
articles of the land association were voted upon.   Mr. Rupp
was there.   I was chairman.   Mr. C. C. Whittaker was
secretary.   The meeting was held in the afternoon at the
Union League Club.   There was a vote taken as to the
adoption of the articles, and it was carried unanimously.
Mr. Rupp did not state to me, or to the meeting, that
he had no authority to sign for the bank, and would not be
bound by the proceedings of the meeting.   The statement
that he had no authority was made at the intermission
between the two meetings."

The most that can be claimed by appellees under all the
evidence is that at one time during the meeting, when a

*viva voce* vote was taken as to the adopting of the articles of agreement, the cashier of the appellant sat silent and made no response.   It is undisputed that he had no authority from appellant's board of directors to act; that on the contrary he had been instructed by such board to refuse, and that at some time during the meeting or meetings held in this behalf he explicitly notified the chairman, Lobdell, that appellant would not consent.   The written articles were not signed by appellant.   The conclusion of these articles, which it was then proposed should be signed by all the creditors interested, was as follows:

"In witness of the foregoing indenture and articles of association, printed on sixteen pages, including this page, all original members to these presents have hereunto set their hands and seals, such of said parties being corporations causing its name to be hereunto affixed by its duly authorized officer, under and pursuant to authority from its board of directors, all on the day and year first above written."

On February 1, 1894, after the meeting at the Union League Club, Lobdell, Farwell & Co. wrote to appellant's cashier:   "We have yours of the 31st ult.   We are sorry to note that your board of directors do not see fit to carry out the wishes of the other creditors, and we do not know that there is anything more that we can do, but you will have to arrange the matter with the other parties interested.   Anything that you do with them will be satisfactory to us."

It is difficult to perceive how it can be maintained upon this evidence that the appellant ever became a party to the Bankers' Land Association.   The evidence, as we view it, establishes conclusively that at no time did appellant ever accede, by specific assent or by conduct amounting to the same, to the various and repeated requests that it become a member of the Bankers' Land Association.

We hold, therefore, that the trust created by the conveyance of the real estate to Lobdell, as trustee, is in force and has not been abandoned by any agreement of all the *cestuis que trust*.   Appellees, however, by their answer to the bill of complaint, by the statement of their counsel at the trial

and by the testimony presented, in effect repudiate the trust, which is in force, and insist that they are committed to the carrying out of another and different trust, viz., that evidenced by the articles of the Bankers' Land Association.

The trustee makes this answer to the third interrogatory filed with appellant's amended bill of complaint:

"This defendant answers that he accepted the trust under which said property was conveyed to him, and that afterward by consent of all the parties interested therein, including said complainant, the said trust was terminated, and this defendant accepted the trust created by said indenture and articles of association."

No fraud is imputed to the trustee by allegation or evidence. The strict integrity of his management of the trust estate is not questioned. But he is proceeding under an erroneous belief that his trust is ended and merged into another and essentially different trust, in which latter his powers are in some respects larger, in that power to mortgage, etc., is given, and in some respects more limited, in that he shares the responsibilities and duties of his trust with two others, viz., a president and secretary of the association. Moreover, under the provisions of the articles of agreement of the Bankers' Land Association, the first dividends arising from the trust estate are applied otherwise than by immediate general *pro rata* distribution among the creditors.

It is therefore apparent that not only appellant, but as well the trustee and other appellees, are entitled to have and should have a decree establishing the trust which is really in force and leaving no further uncertainty as to the future management of the trust estate.

We are of opinion that appellant is entitled to an accounting. No question is raised as to the willingness of the trustee to account to the committee of the Bankers' Land Association. He says in his answer that he " has acted in such manner as such trustee, under the advice and direction of the parties interested herein, acting through the executive committee provided for by said indenture and articles of

agreement, and has at all times conducted the matter of said trust satisfactorily to said committee, and has from time to time made full reports of his receipts, disbursements, acts and doings as such trustee, to said executive committee, and to all meetings from time to time held by the stockholders of the said Bankers' Land Association, and has made dividends whenever directed by such executive committee, and has tendered or offered to pay said complainant its full proportionate share of all dividends made by him as aforesaid, but that said complainant has at all times refused to receive such dividends."

It would seem, however, that the offer to pay dividends to appellant was coupled with a condition, viz., that appellant should become a member of the Bankers' Land Association.

On June 18, 1894, the trustee wrote appellant as follows:

"In reply to your favor of the 13th inst., regarding the property of the Bankers' Land Association, I have to advise you that nothing has been sold up to this date. My understanding is that the executive committee do not expect to order the payment of any dividends this year. I would like to make a full and complete answer to all communications which I receive, and there is much that I might say to you about the property of the association, and propositions which are being considered for disposing of a portion of it, but your attitude up to the present time is such that I feel some constraint in writing you. Do you not think that the time has about arrived when you should request that a certificate should be sent you, and make no question concerning your membership in the association?"

The trustee testified as follows:

"No dividend has been declared by the land association. Let me qualify that answer by saying that there were fractional amounts on each claim over and above the even hundreds of dollars, and those amounts were, by agreement, refunded to members of the association out of moneys we had gotten in. By agreement of a majority of those in interest in the land association, it was done in that way.

It was not a dividend; a dividend would be declared *pro rata.* Those fractional certificates were issued pursuant to the plan or agreement of the land association and were provided for in the by-laws. There was nothing said about fractional certificates before the formation of the land association. The complainant's part of this dividend, or whatever you call it, is there now subject to the complainant's order when he takes his certificate, because it is not a *pro rata* dividend, but there is so much due on the certificate if he would take it."

" Q. It lies there subject to his order provided he will become a member of the land association and receive his certificate and pay the assessments which have been levied against his interest; is that what you mean ? "

" A.    It lies there subject to his order when he takes his certificate."

Appellant, as a *cestui que trust,* is entitled to an accounting and to its share of any funds distributed without being obliged to become a member of this association, or to accept any certificate issued by it.

As against the equities of appellant it is objected that the evidence discloses, although the answer does not aver, that pending the negotiations with the Harveys, which resulted in the conveyance by them of the property in question and the retention by them of the Prairie avenue property, appellant, by secret dealings with the Harveys, obtained from them a bond securing any deficiency which might be left in the payment of appellant's claims out of the trust estate. It appears that after all other creditors had assented to the settlement with the Harveys appellant withheld its assent until the bond was given. We are unable to see how this fact can affect the existence of the trust, the right of appellant to have its existence, which is now disputed, established, or the right to an accounting. No other effect of the transaction is suggested by counsel.

It is also urged that the evidence shows that a sale of all the interest of appellant in the trust estate was made to T. W. Harvey, as averred in answer, and that the appellant,

therefore, has now no equities to be considered. It does appear that an agreement was entered into by appellant and Harvey to the effect that appellant should sell and Harvey should buy the interest of appellant upon certain terms, payment to be made by installments. But it also appears that this transaction was not carried out, and that Harvey abandoned his right of purchase.

Wheeler, who was attorney for appellant in the matter, testified as follows:

"I had a talk with Mr. T. W. Harvey at that time, and asked him what he intended to do in regard to completing the purchase of the interests of the State Bank of Nauvoo in this property. He stated to me that he was utterly unable to complete the conditional purchase of it (purchase, I think, was the word he used), and that he did not intend to complete it, and that the complainant could do as it pleased with the claim. I also asked him if he had any objection to our selling the claim, if we could, to Mr. A. C. Badger, his father-in-law, who was on the bond. He stated that he had no objections whatever, and that we could do entirely as we pleased with the claim."

This evidence is not contradicted.

In addition to the other relief prayed, appellant asks by its bill of complaint, that the trustee may be decreed to sell the trust property. It does not appear necessary, at this time, to direct the trustee in this regard. There is nothing to indicate that he will not, when the opportunity offers, sell the property in question to the best advantage possible, and it does affirmatively appear that no opportunity of sale has been neglected in the past, and the prospects of advantageous sale are not good for the present.

It is enough that the trial court enter a decree establishing the trust and requiring an accounting. When the facts warrant an order to sell, the trial court can be petitioned in that behalf.

The decree is reversed and the cause remanded for further proceeding in accordance with this opinion. Reversed and remanded.