## Edwin L. Lobdell v. Julia M. Ray.

1. MORTGAGES—*Criterion of Personal Liability for an Incumbrance upon Property Purchased.*—The criterion of personal liability for an incumbrance upon property purchased is to be found in contract or consent of the purchaser to become bound for the debt where it forms a part of the price he is to pay for the incumbered property. But where the property is cast upon a person by act of law, or by the agency of others, who are the beneficiaries, there is no reason for assuming that he intended to bind himself, and thereby add a new security for the payment.

2. SAME—*What is Necessary to Create a Personal Liability on Part of Purchaser of Mortgaged Property to Pay Mortgagee in Absence of Express Promise or Provision in Deed.*—To create a personal liability on the part of the purchaser and grantee of mortgaged premises to pay the mortgage, in the absence of a provision in the deed assuming it or an express promise by the purchaser to pay the mortgage, it must be shown that the purchaser and seller agreed upon the purchase price of the premises, and that by agreement between them the amount of the mortgage was deducted from such agreed price.

**Bill to Foreclose a Trust Deed.**—Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded. Opinion filed October 30, 1903.

ULLMAN & HACKER, attorneys for appellant; DEFREES, BRACE & RITTER, of counsel.

MYRON H. BEACH, attorney for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

July 24, 1888, one Henderson conveyed his leasehold interest in certain real estate in Cook county to Joseph Matteson, by trust deed in the nature of a mortgage to secure his two notes for $12,500 each, payable to appellee five years after

date. Two conveyances of the mortgaged premises were afterward, made to appellant and accepted by him. Appellee exhibited her bill in the Superior Court against appellant and others for the foreclosure of said trust deed. There was a decree finding the amount due on the mortgage, an order of sale and a sale of the mortgaged premises under said decree, resulting in a deficiency of $26,521.08, for which appellee afterward obtained a personal decree against appellant, to reverse which this appeal is prosecuted.

January 18, 1893, the mortgaged premises and several other tracts of land owned by the Harvey Lumber Company, although the title to some of them was in third persons, were conveyed, part to appellant, part to Hinckley and part to Williams, under a resolution of the board of directors of the lumber company of that date, to secure the payment of notes of the lumber company then held, or which might be held thereafter, by Lobdell, Farwell & Company, a corporation, or which had been sold, or might thereafter be sold, by said corporation.

Each of the grantees entered into an agreement with the lumber company, in which the trust was declared as above set forth, and in the agreements with Williams and Hinckley it was stipulated that each might convey to appellant, and that he should hold the property so conveyed upon the same trusts. Hinckley and Williams conveyed to appellant, so that in October, 1893, he held all the real estate conveyed in trust by virtue of said resolution.

The lumber company was unable to meet its obligations, and a meeting of the holders of the notes secured by the said conveyances was held in October, 1893, at which the lumber company made a proposition looking to the conveyance absolutely of the whole or a part of the properties then held by appellant in trust, in full satisfaction of the demands they had been conveyed to secure. An estimate of the respective values of the different trust properties, made by Mr. Whittacre, the manager of the mortgage and loan department of Lobdell, Farwell & Company, was sub-

mitted to the meeting, in which the values of the properties and incumbrances were set forth as follows :

VALUES :

| | | |
|---|---|---:|
| 1. | Prairie avenue lot and residence............... | $81,000 |
| 2. | Manufacturing property, 22d & Morgan Sts.. | 85,000 |
| 3. | Sherman and 66th street..................... | 65,000 |
| 4. | Leasehold, Van Buren and Center avenue.... | 40,000 |
| 5. | Lots in Harvey's Subdivision................ | 18,500 |
| | | $289,500 |

INCUMBRANCES :

| | | |
|---|---:|---:|
| 1 and 2. Prairie avenue and Morgan street property.................$80,000 | | |
| 3. Sherman and 66th St............... | 37,600 | |
| 4. Leasehold, Van Buren and Center Ave........................... | 25,000 | 142,600 |
| Net...................... | | $146,900 |

January 3, 1894, an agreement was made between the note holders and the lumber company after much negotiation. The terms of this agreement are shown by the resolution of the directors of the lumber company adopted on that day, which was prepared by the attorneys of the note holders as expressing their understanding of the terms agreed upon, delivered to the lumber company for adoption by its directors, and upon its adoption a certified transcript from the records of that company showing such adoption was handed to the attorneys of the note holders as showing the lumber company's assent to the agreement.

By this agreement the lumber company promised the note holders to convey absolutely to appellant the properties then held by him in trust, except the Prairie avenue house; to cancel and surrender the declarations of trust held by it, and that Mrs. Harvey would take a deed to the Prairie avenue house and thereby assume and agree to pay $47,000 of the $80,000 incumbrance resting upon it and the Morgan street property. The note holders agreed that they would cancel and surrender to the lumber company their notes and accounts secured by the first trust arrangement amounting to $88,072.32, and that appellant would convey

to Mrs. Harvey the Prairie avenue house in the manner above provided. All the deeds were to be dated December 30, 1893.

This agreement was at once carried into effect, the conveyances made, notes and declarations of trust canceled and surrendered in accordance with its terms. Horace H. Badger, who had conveyed the premises in question to Hinckley under the resolution of January 18, 1893, joined with the lumber company in a deed of quit-claim to the leasehold in question to appellant, which recited a consideration of $1. This deed, the deed of Badger to Hinckley and that of Hinckley to appellant, each, as to the incumbrance on the premises, contained only the following provision :

"Said premises are subject to a trust deed to Joseph Matteson, trustee, dated July 25, 1888, recorded," etc.

This agreement in effect superseded the trust arrangement of January 18, 1893. Before it was made, appellant held in trust, to secure the lumber company's notes for $88,072.32, the properties conveyed to him absolutely under it; the lumber company was liable on said notes and upon their payment was entitled to a re-conveyance of the properties, and appellant was a trustee, both for the lumber company, the creator of the trust, and the note holders, the *cestuis que trust.*

Under the new agreement the note holders surrendered their notes, amounting to nearly $90,000, to the lumber company, and appellant by their direction released the Prairie avenue house from the trust in their favor; the lumber company released its right to a reconveyance of its said properties on the payment of its notes, and appellant thereafter held said properties, except the Prairie avenue house, in trust for the sole use and benefit of the note holders.

It is clear that appellant, as trustee for the note holders, had no authority to make with the lumber company the agreement of January 3, 1894. That agreement could only be made by the lumber company on the one part and the note holders on the other. The note holders were the owners of the notes agreed to be surrendered, not appel-

lant. It was for them, not for him, to say whether the
properties should be bought on the terms offered by the
lumber company, and if bought, to whom the conveyance
should be made. The profits, if any, arising from the trans-
action, would go to the note holders—the loss, if any, be
borne by them.

To the entries in certain books of account of appellant as
treasurer of the Bankers' Association, much importance was
attached by the learned judge who heard the cause and by
the master. It so happened that the notes secured by the
two trust agreements were held by banks and bankers in
this and other states. These banks and bankers surrendered
their notes to the lumber company pursuant to the agree-
ment of January 3, 1894, and then proceeded to organize
an association to be known as the Bankers' Association,
which was intended to include the owners of all the surren-
dered notes. Of this association appellant was made treas-
urer and his books of account as such treasurer were put
in evidence. To the entries themselves we attach little
importance. They seem to amount to no more than an
inventory of the different properties conveyed to appellant
with the statement of the incumbrances thereon, in the
form of debit and credit entries of the same amounts on the
same day. But the fact that such an association was formed
and appellant made treasurer thereof tends strongly to show
that the note holders were the real parties in interest, the
real purchasers and owners of the properties conveyed to
appellant. It turned out that the Bank of Nauvoo, which
held and surrendered a note for $3,500, would not agree to
the organization of the Bankers' Association, and it was held
by this court and by the Supreme Court, on appeal, that
the trust in favor of the note holders created by the con-
tract of January 3, 1894, could only be merged in a new
trust by the consent of all the *cestuis que trust;* that the
Bank of Nauvoo, not having consented to the transfer of
its interest under that trust arrangement, the Bankers'
Association had no legal existence, but the trust arrange-
ment of January 3, 1894, remained in existence, and the

Bank of Nauvoo was entitled to have the same declared and executed. Bank of Nauvoo v. Lobdell, 78 Ill. App. 600; s. c., 180 Ill. 56.

The testimony of the witnesses, the just inferences to be drawn from the facts proven, lead us to the conclusion that the parties to the agreement of January 3, 1894, were the lumber company on the one part, and the note holders on the other; that the note holders were the real purchasers of the leasehold in question, and that appellant took the conveyance thereof to oblige the note holders and is merely a naked trustee for them.

The criterion of personal liability for an incumbrance upon property purchased is to be found in contract or consent of the purchaser to become bound for the debt where it forms a part of the price he is to pay for the incumbered property. But where the property is cast upon a person by act of law, or by the agency of others, who are the beneficiaries, there is no reason for assuming that he intended to bind himself and thereby add a new security for the payment. Jones on Mortgages, Sec. 757; Girard Life Ins. Co. v. Stewart, 86 Pa. St. 89.

The master in his report says:

" Under the principle of the law declared by the Supreme Court of the United States in the case of Taylor v. Davis, 110 U. S. 330, even if appellant were held to be a trustee in this case, he would be the principal and his liability would be that of principal, inasmuch as a trustee is not an agent and has no principal."

The case referred to only recognizes and applies the well settled rule that where a trustee sees fit to bind himself by a personal covenant, he is liable for a breach thereof in the same manner as any other person, although he describes himself as covenanting as trustee. This rule has no application to the present case, where the trustee entered into no personal covenant, made no express promise to pay the incumbrance, and the only question is whether a promise or assent on his part to pay the incumbrance can properly be implied from the facts and circumstances attending the conveyance of the incumbered property to

him.   The master further states as a ground for holding appellant personally liable for the incumbrance, although he was a mere trustee, that the trust was secret and never brought to the knowledge of appellee.   But this position is not tenable.   The mortgagee's right to a personal decree against a purchaser of the mortgaged premises in any case depends upon no original equity residing in himself, but upon the right of the mortgagor against his grantee, to which right the mortgagee succeeds.

In this case it is not claimed that a promise to appellee directly to pay to her the incumbrance can in any possible view of the case be implied, but it is claimed by appellee that a promise by appellant to the lumber company to pay the incumbrance may be implied, and that appellee may enforce that promise.   The lumber company was the creator of the trust in question.   Appellee seeks to enforce an implied promise to the lumber company, or an equity raised in its favor, and it is wholly immaterial whether appellant had or had not knowledge of the trust arrangement.

There is another view that may be taken of the case that is conclusive against the right of appellee to a deficiency decree against appellant.   To create a personal liability on the part of the purchaser and grantee of mortgaged premises, to pay the mortgage in the absence of a provision in the deed assuming it or an express promise by the purchaser to pay the mortgage, it must be shown that the purchaser and seller agreed upon the purchase price of the premises, and that by agreement between them, the amount of the mortgage was deducted from such agreed price.   In such a case so much of the purchase price as is requisite to pay the mortgage is taken from the purchase price and appropriated to the payment of the mortgage.   In such case there is an implied promise on the part of the grantee to pay the mortgage which the mortgagee may enforce.

In this case no such agreed purchase price and deduction of the amount of the mortgage therefrom are shown.   It appears that in the estimate made by Whittacre of the value

Lobdell v. Ray.

of the trust properties, the leasehold in question was valued at $40,000, and the incumbrance stated at $25,000, but it is clear that the agreement was not made upon the basis of Whittacre's valuation as the purchase price of the several properties. The total of his valuations was $289,000; take from this the value of the Prairie avenue house, $81,000, we have as his estimate of the value of the properties conveyed to appellant absolutely on December 30, 1903, $208,000.

The incumbrances amounted to $142,600; deduct the amount assumed on the Prairie avenue house, $47,000, and we have $95,600. Taking the sum from $208,000 we have $112,400 as the sum the grantor would be entitled to receive and the grantee bound to pay, if Whittacre's valuations were taken as the agreed price of property. But all that it was agreed that the grantor should receive was the cancellation and surrender of $88,072.32 in notes and accounts, or $34,327.68 less than the grantor would have been entitled to receive, if Whittacre's valuation had been agreed upon, as the purchase price of the several properties.

It is to be noticed also that the consideration expressed in the deed in question was one dollar—not forty thousand dollars, and that the same agreement which provided that the properties in question should be conveyed to appellant "subject to the Matteson trust deed," provided that the deed to Mrs. Harvey of the Prairie avenue house should contain a provision whereby she "would assume and agree to pay" $47,000 of an incumbrance.

Irrespective of the question whether the contract of purchase is to be regarded as made with the lumber company by the note holders or by appellant, the record, in our opinion, does not show a contract on the part of the grantee to pay $40,000 for the leasehold in question, a payment of $15,000, and such deduction of the mortgage for $25,000 from the purchase money agreed to be paid, and leaving it in the hands of the purchaser, as to create a personal liability on the part of the grantee to pay the mortgage; but shows a contract to exchange notes and accounts

for incumbered property under circumstances that lead to the conclusion that the grantee assumed no personal liability under the contract.

The decree of the Superior Court will be reversed and the cause remanded for further proceedings in accordance with the views above stated.

Mr. Justice STEIN took no part in the decision of this case.