## TAYLOR & Another *v.* DAVIS' ADMINISTRATRIX.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF ILLINOIS.

Argued January 21st, 22d, 1884.—Decided February 4th, 1884.

*Contract.*

Real estate and personal property were held in trust by two trustees. One trustee at the request of the other and of a third person resigned his trust, without requiring previous payment of his demands against the trust estate, and the third person was appointed trustee in his place. The two trustees then executed a written agreement with the outgoing trustee, undertaking to apply to the payment of his said claims "all the moneys which shall come into our hands as trustees as aforesaid after first paying therefrom all taxes and current expenses of said property and trust :" *Held,* That this was a contract to be enforced at law, against the parties individually, and not a trust to be enforced in a court of equity ; and that the current expenses of the trust did not include the construction of fire-proof buildings and unusual expenditures for protecting the property.

The defendant in error, administratrix, devisee, and legatee of Charles Davis, deceased, was plaintiff in the court below. The declaration alleged that on October 4th, 1861, the defendants, S. Staats Taylor and Edwin Parsons, trustees of the Cairo City property, executed and delivered to Charles Davis, then in life but since deceased, a contract in writing, of which the following is a copy :

"Whereas Charles Davis, late one of the trustees of the Cairo City property, has agreed to transfer to the present trustees of said property, S. Staats Taylor and Edwin Parsons, at their request, all of said property remaining in his hands, without requiring previous payment of his demands against said property : Now, in consideration of the premises, and of one dollar to us in hand paid, we, S. Staats Taylor and Edwin Parsons, trustees of the Cairo City property, hereby promise and agree to and with the said Charles Davis, his executors, administrators, or assigns, that we will apply, from time to time, to the payment of all the just claims and demands of said Charles Davis against said Cairo City property, including the sum of $7,382.60, audited October 1st, 1860, until the same shall be fully paid, all the moneys which

shall come and remain in our hands as trustees as aforesaid, after first paying therefrom all taxes and current expenses of said property and trust actually imposed or incurred. But said claims and demands of said Davis, his executors or administrators, shall not be preferred to like claims of his co-trustee, John H. Wright.

"October 4th, 1861.                    "S. STAATS TAYLOR,
                                        "EDWIN PARSONS,
                    "*Trustees of the Cairo City Property.*"

The declaration further alleged that at the date of the execution and delivery of the contract there was due to Davis on just claims and demands against the Cairo City property, which had been audited and allowed, the sum of $7,382.60; that on March 1st, 1867, Davis departed this life, leaving a last will and testament, which was afterwards duly proven, whereby he devised and bequeathed all his estate to the plaintiff; that afterwards, on September 30th, 1867, the defendants, in consideration of the premises, executed and delivered to the plaintiff another contract, whereby they renewed and confirmed the contract of October 4th, 1861, between them and Davis, and agreed to pay the plaintiff, as his administratrix, the amounts due his estate in the same manner and form as in the instrument of October 4th, 1861, is particularly set forth; and that although large sums of money had come into the hands of the defendants as such trustees, over and above the amounts necessary to pay all the taxes and current expenses of the property and trust actually imposed or incurred, they had neglected and refused to pay said sum of money or any part of it.

The defendants pleaded non-assumpsit. The parties waived a trial by jury and submitted the issues of fact as well as of law to the court, which made a special finding of facts upon which it rendered judgment against the defendants in the sum of $12,957.57, that being the principal sum due Davis from the Cairo City property on October 4th, 1861, with interest from that date.

To reverse that judgment a writ of error was sued out.

*Mr. Wager Swayne* for plaintiff in error.

*Mr. J. Hubley Ashton* for defendant in error.

Mr. Justice Woods delivered the opinion of the court.

The findings of the Circuit Court show the following facts: The contracts of October 4th, 1861, and of September 30th, 1867, were executed and delivered by the plaintiffs in error, as averred in the declaration; the said Charles Davis and one Thomas S. Taylor had, previous to the execution of the first-mentioned instrument, been trustees of the Cairo City property under and by virtue of a declaration of trust dated September 29th, 1846. That instrument, after reciting the conveyance to Taylor and Davis of about nine thousand acres of land situate in the State of Illinois at and near the confluence of the Mississippi and Ohio Rivers, declared that the property was held in trust by them to, for, and upon the terms, conditions, uses, interests, and purposes therein pointed out. The fourth section of the instrument defined the powers of the trustees as follows:

" The said Taylor and Davis and their successors shall have the general management and control of all the property aforesaid, and of the proceeds thereof, pay the taxes thereon when in funds, and all the expenses incident to the creation and execution of the trust hereby declared. They may make such contracts, execute such instruments and obligations, employ such agents and laborers, make such erections and improvements on said lands, and such purchases and sales of real and personal estate, leases, donations, and investments as may be necessary and expedient to promote the interests of the shareholders," &c.

The principal object of the co-owners of the land described in the declaration of trust was to build a city thereon. In the exercise of their powers the trustees caused—

"The erection of levees of sufficient size and height to protect the city to be commenced ; the old hotel was repaired ; river bank protected from abrasion ; roads were cut through the timber ; part of the land cleared ; a new hotel built at an expense to the trust of about twenty thousand dollars, and grounds were laid out for a cemetery ; a steamboat was bought and run on the business of this trust ; a quarry operated, also a ferry ; newspapers were established ; the city and additions were platted ;

lots were donated as compensation to persons who assisted in protecting the property from adverse legislation ; wharves were constructed and improved ; all these expenses were paid out of the trust fund."

About September 1st, 1860, the plaintiffs in error were, by regular conveyances, made the successors of Taylor and Davis as trustees. By virtue of the powers expressed in the fourth clause of the declaration of trust they executed the agreement of October 4th, 1861, in order to obtain from Davis a transfer of the trust estate.

In order to carry out the purposes of the trust, the plaintiffs in error, on October 1st, 1863, borrowed $75,000, and on October 1st, 1867, $50,000, to secure which they executed mortgages on all the real estate of the trust, which were afterwards foreclosed and the property sold, and the proceeds of the sale were insufficient to pay the amount due on the mortgage by $47,572.27.

During the trusteeship of the plaintiffs in error they faithfully applied all the moneys received by them to the purposes of the trust and in discharging what in their opinion were the current expenses of the trust and in the exercise of a fair and reasonable judgment therein. Between September 1st, 1860, and the year 1874, the plaintiffs in error expended in improvements on the trust property, including the fire-proof office mentioned in the 8th finding, the sum of $298,226.91, and during the same period the additional sum of $343,226.94 in building levees on the Ohio and Mississippi Rivers, and in protecting the Mississippi River bank, and, as appears from the accounts made part of the findings, much the greater part of these sums were expended after October 4th, 1881. On September 30th, 1867, the time of the execution of the obligation to the defendant in error and at the commencement of this suit, they had no money of the trust fund in their hands, but the fund was indebted to them in a sum exceeding $8,000.

This eighth finding established the following facts:

About the winter of 1863 and spring of 1864 the plaintiffs in error, as trustees, erected, at a cost of about $35,000, a fire-

proof office, which they deemed to be absolutely necessary for
the safe keeping of the valuable papers and the transaction of
the business of the trust. But the court was of the opinion
that said expenditure was not the current expenses of the
trust.

The court further found that the plaintiffs in error "at divers
days and dates in the years 1863, 1864, 1865, 1866, 1873, and
1874 had in their hands moneys belonging to said trust fund
sufficient to pay the amount due the plaintiff, after paying
therefrom all taxes on said trust property and the ordinary
expenses of said trust, as appears from the accounts herein con-
tained; and that the plaintiff on divers occasions prior to the
bringing of this suit, and prior to January 1st, 1868, demanded
of the defendants payment of the amount due on said contract,
which was not paid."

Upon these facts the plaintiffs in error contend that the in-
struments sued on, construed in connection with the declaration
of trust and the administration of the trust estate by them,
create between the parties the relation of trustees and *cestui
que trust*, and that a court of law could not entertain jurisdic-
tion of the suit against a trustee in his trust capacity, and that
the Circuit Court erred in rendering judgment against the
plaintiffs in error in their individual capacity.

In our opinion, the relation of trustees and *cestui que trust*
did not arise between the plaintiffs in error and Davis upon the
contract of October 4th, 1861. It is true the plaintiffs in error
are trustees of the Cairo City property, but they are not trus-
tees for Davis or the administratrix of his estate. This is, in
substance, the case of trustees promising to repay money which
they had borrowed of a stranger for the benefit of the trust
estate. Their undertaking was subsequent to the time when
they assumed the duties of the trust. The declaration of trust
expressed fully the powers and duties of the trustees, and the
contract sued on did not and could not modify it. The defend-
ant in error did not sue as a *cestui que trust*, or base her claim
on any trust, express or implied, undertaken by the plaintiffs
in error for her benefit.

A trustee is not an agent. An agent represents and acts for

his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another. When an agent contracts in the name of his principal, the principal contracts and is bound, but the agent is not. When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee. As a trustee holds the estate, although only with the power and for the purpose of managing it, he is personally bound by the contracts he makes as trustee, even when designating himself as such. The mere use by the promisor of the name of trustee or any other name of office or employment will not discharge him. Of course when a trustee acts in good faith for the benefit of the trust, he is entitled to indemnify himself for his engagements out of the estate in his hands, and for this purpose a credit for his expenditures will be allowed in his accounts by the court having jurisdiction thereof.

If a trustee contracting for the benefit of a trust wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally responsible, but that the other party is to look solely to the trust estate. There are, no doubt, cases where persons occupy the position of quasi trustees, under the appointment of a court, such as receivers charged with the performance of active duties, in which it would involve much hardship to make them personally liable. But in such cases, as the parties have the right to prove their claims against the common fund, and have them allowed by the court, the officer may have the protection of the court by which he is appointed, restraining parties from bringing suits against him, except where leave is given for the purpose of fixing the amount due. *Barton* v. *Barbour*, 104 U. S. 126.

In this case the contract is the personal contract of the plaintiffs in error. Before it was made the trust estate and the plaintiffs in error, in their capacity of trustees, were already bound for the debt due to Davis, and he had the right to keep possession of the trust estate until he was paid. It is clear,

from the contract and the circumstances under which it was made, that Davis consented to yield possession of the trust property on condition that he received some security for his payment other than the mere liability of the trust estate. He therefore took the contract in suit, and yielded the possession of the trust estate without exacting payment of his demands.

The designation of the plaintiffs in error as trustees in the contract and in the pleadings was merely descriptive of their persons. The contract was their personal undertaking. It is true it was their promise to pay the claim of Davis out of the trust funds. But this was simply a limitation upon the contract; it was none the less their personal obligation. They personally undertook to pay a conceded balance due to Davis, whenever there should be a certain surplus of trust funds in their hands sufficient for that purpose, and they are personally liable for the breach of their undertaking.

The case of *Duvall* v. *Craig*, 2 Wheat. 45, supports these views. The suit was an action at law upon the covenants of warranty in a deed. The deed was executed by John Craig and by Robert Johnson and Elijah Craig as his trustees. The trustees described themselves as trustees of John Craig in the granting clause of the deed and in the covenants of warranty, and subscribed their names as such. The Circuit Court sustained a demurrer to the declaration. In this court it was contended for the defendant in error that, Johnson and Elijah Craig having covenanted as trustees, a court of equity was the only forum in which they could be sued, and that no individual judgment could be rendered against them.

But the court, speaking by Mr. Justice Story, said:

"If a trustee chooses to bind himself by a personal covenant, he is liable at law for a breach thereof in the same manner as any other person, although he describes himself as covenanting as trustee, for in such case the covenant binds him personally, and the addition of the words 'as trustee' is but matter of description to show the character in which he acts for his own protection, and in no degree affects the rights or remedies of the other party." The court added: "The reasoning upon this point disposes also of the second, that the covenant being made by Johnson and Elijah

Craig as trustees, no individual judgment can be rendered against them. It is plain . . there could have been no other judgment rendered against them, for at law a judgment against a trustee in such special capacity is utterly unknown."

The same learned judge, in his work on Promissory Notes, declares :

"As to trustees, guardians, executors, and administrators, and other persons acting *en autre droit,* they are by our law generally held personally liable on promissory notes, because they have no authority to bind *ex directo* the persons for whom, or for whose benefit, or for whose estate, they act, and hence, to give any validity to the note, they must be deemed personally bound as makers." § 63.

See also *Thacher* v. *Dinsmore,* 5 Mass. 299 ; *Forster* v. *Fuller,* 6 id. 58 ; *Hills* v. *Bannister,* 8 Cowen, 31 ; *Eaton* v. *Bell,* 5 B. & Ald. 34.

The cases cited show that whether the obligation of a trustee is under seal or not is an immaterial fact, so far as it concerns his personal liability thereon.

We are of opinion, therefore, that the plaintiffs in error, having assumed a personal liability, the suit was well brought against them in a court of law, and that the court did not err in rendering judgment against them in their individual capacity.

The next assignment of error is that the facts found by the court do not sustain the judgment. The contention is that the findings do not show that there was any surplus fund remaining in the hands of the trustees "after paying therefrom all taxes and current expenses."

The findings of the court expressly state that in the years 1863, 1864, 1865, 1866, 1873, and 1874 the plaintiffs in error had in their hands moneys belonging to the trust fund sufficient to pay the amount due the defendant in error, after paying therefrom all taxes on the trust property and the ordinary expenses of the trust. These findings are fully sustained by the accounts therein referred to, unless there should be included in the current expenses of the trust the large sums expended by

the trustees in the erection of the fire-proof office and other improvements, and in building and protecting the levees. We are of opinion that these and like expenditures are not current expenses of the trust, within the meaning of the contract of October 4th, 1861. By that contract even the payment of taxes is not classed as among current expenses. If the expenditures referred to can be called expenses at all, they are extraordinary expenses. In our view they are investments of the capital of the Cairo City property, as much so as the purchase of land or the construction of water works, gas works, or a system of sewerage. It could scarcely have been the purpose of Davis, when he exacted from the plaintiffs in error the contract of October 4th, 1861, in consideration of his yielding possession of the trust property, on which he had a lien, and from which he could have enforced immediate satisfaction of his debt, to postpone its payment for an indefinite period, and until the large sums which the plaintiffs in error expended in substantial and permanent improvements on the trust property had been paid. We think the correct interpretation of the phrase "current expenses" was that given it by the Circuit Court, namely, ordinary expenses. The contract of the plaintiffs in error being thus construed, their liability to the defendant in error upon the facts found is clear. We are of opinion that there is no error in the record. The judgment of the Circuit Court is, therefore,

*Affirmed.*