[No. 27934. Department One. January 18, 1941.]

TERMINAL TRADING COMPANY, *Respondent,* v. A. L. BABBIT *et al., Appellants.*[1]

[1]Reported in 109 P. (2d) 564.

*Henderson, Carnahan & Thompson* and *Neal, Bonneville & Hughes,* for appellants.

*Eggerman & Rosling* and *Joseph J. Lanza,* for respondent.

ROBINSON, C. J.—This is an action sounding in contract. The plaintiff sued for the price of goods sold and delivered. The defendants were held liable, although they did not order the goods, nor receive them, nor agree to pay for them. Neither did the plaintiff seller invoice the goods to them nor look to them for payment at the time they were furnished. It is, therefore, evident that the essentials of a legal contract were completely lacking, and that it was incumbent upon the plaintiff, in order to recover, to establish facts which would, in equity and good conscience, require the court to create and enforce, for its relief, some sort of constructive contractual obligation. Whether or not such a state of facts is shown by the record, is the decisive question on this appeal.

On February 19, 1937, the Dennett Milling Company, a corporation, was in a failing condition. Its creditors were called together, at the instance of one of their number, to consider the situation. The principal creditors were a bank, of which defendant Babbit was an officer and to which the corporation owed $2,190; another bank, of which defendant Shaffer was an officer and to which the corporation owed $2,500; and Terminal Trading Company, the plaintiff in this action, to which the corporation owed $2,082.37.

At the creditors' conference, on February 26, 1937, there was some diversity of opinion. A number of the creditors and creditors' representatives wished to

force liquidation. Mr. Babbit appears to have been the leader of this group. Others were of the opinion that the business should be carried on indefinitely, in the hope that it might ultimately be sold as a going concern. Mr. Nelson, president of the plaintiff, Terminal Trading Company, was strongly of that opinion. Mr. Babbit testified that he finally withdrew his opposition to that plan, deferring to Nelson's judgment, in view of the fact that Nelson was experienced in the grain business.

At any rate, it was agreed that the corporation should continue in business, and a general plan by which the creditors should be safeguarded was tentatively agreed upon. The arrangement made was, within a few days, merged into a formal written contract, which will hereinafter be set out somewhat in detail. It will be sufficient for our present purpose to state that the plan provided for a "creditors' committee" to carry it into execution. Defendants Babbit and Shaffer, and Nelson, president of the plaintiff company, were asked to serve on the creditors' committee. Nelson at first accepted, but withdrew his acceptance before the meeting adjourned, and Farr, the third defendant, was selected in his stead. He was an officer of a feed company to which the corporation owed $140.59.

After Babbit, Shaffer, and Farr became the creditors' committee, they, pursuant to the contract between all parties, became the directors of the corporation. It operated nearly two years thereafter. During that period, the plaintiff, Terminal Trading Company, shipped and invoiced to the corporation grain of the value of nearly ten thousand dollars. The operation of the corporation was not successful, and it was liquidated early in 1939, the creditors receiving a very trifling dividend.

The Terminal Trading Company had not been paid for grain delivered between June 27th and November 9th, 1938, of the value of $1,244.80. It brought this suit to recover that amount, with interest, from Babbit, Shaffer, and Farr, individually, and from the communities composed of themselves and their respective wives. Judgment was entered against the defendants as prayed for, together with costs, and they appeal therefrom.

The judgment was rendered upon the theory that Babbit, Shaffer, and Farr became trustees under the four-party contract entered into in writing on March 1, 1937, by and between (1) Dennett Milling Company, (2) the owners of all of its capital stock, (3) certain of the company's creditors (among them the plaintiff), and (4) Babbit, Shaffer, and Farr; that they, as trustees (not the corporation), purchased the grain in administering their trust, and the familiar general rule was applied that, where a trustee makes a contract in the administration of his trust, he may be held personally liable upon it. The contract of March 1, 1937, mentioned at the beginning of this paragraph, is the contract referred to in a statement in appellants' brief, which we quote as follows:

"There is no substantial conflict in the evidence in this case. It will not be contended, we believe, that appellants ordered this grain or that they ever agreed to pay for it. Neither are there here involved any elements of fraud, negligence or *ultra vires* acts on the part of appellants. Appellants at all times acted in strict compliance with the terms of the contract. Unless recovery can be justified under the terms of the contract as written, we submit that it cannot be justified at all."

We agree with that statement.

The contract is a long and elaborate instrument. We must, perforce, restrict ourselves to an outline of

the substance of its provisions, with an occasional quotation of those which are particularly pertinent to the inquiry.

Paragraph one sets forth the contractual relations between Skillings and wife, sole owners of the capital stock, and Babbit, Shaffer, and Farr, "as the trustees and agents of said stockholders." The stockholders agree to assign to Babbit, Shaffer, and Farr all of the stock, for the purposes set out in subparagraphs (a), (b), (c), and (d).

Subparagraph (a) gives Babbit, Shaffer, and Farr the right to vote the stock on behalf of the stockholders, their successors, pledgees, or assignees, during the life of the agreement or any extension thereof.

Subparagraph (b) provides that, during the life of the agreement or any extension thereof, "the corporate affairs of Dennett Milling Company" shall be managed by three trustees; that the first three to be elected shall be Babbit, Shaffer, and Farr, "it being understood that the said persons herein named are nominees and representatives of the creditors who are parties hereto."

Subparagraph (c) provides that the stockholders agree that, should they assign, sell, or pledge any of their stock, the new certificates to be issued shall be endorsed by the purchaser, assignee, or pledgee and deposited with Babbit, Shaffer, and Farr, and their right to vote the stock, as provided in subparagraph (a), shall attach and continue during the life of the agreement.

Subparagraph (d) provides for the choice of a successor in case of the death or resignation of Babbit, Shaffer, or Farr.

Paragraph two of the contract contains the agreement of the signatory creditors. They agree that they will bring no suit or action for a period of two years,

provided that they shall be relieved from that obligation if any existing or future creditor secures a judgment, attaches, or levies execution, or if a receiver should be appointed.

Paragraph three provides that any signatory creditor may cancel his agreement "should the Dennett Milling Company cease or abandon operations," or its property be distrained for taxes.

We quote paragraphs four and five in their entirety:

"(4) Nothing herein contained shall be construed as in any way subordinating the claims of creditors signing the same to the claims of those who may not sign or to the claims of any subsequent creditor of said corporation; provided, however, that the board of directors of the company may, at a meeting attended by all of them, by unanimous vote, subordinate the claims of creditors who are parties hereto to the claims of any creditor who becomes such subsequent to the 7th day of March, 1937, which said claim grew out of or shall grow out of the purpose of securing money, funds, materials, supplies or credit with which to carry on the business of the company or to furnish necessary working capital. The said A. L. Babbit, Ralph Shaffer and W. A. Farr, named as directors of said corporation, and their successors, shall be considered as the creditors' committee representing the creditors who are parties hereto as well as stockholders and other creditors in their capacities as directors.

"(5) Nothing contained in this agreement shall obligate the creditors signing the same to furnish any money or credit to Dennett Milling Company for the purpose of permitting it to hereafter carry on or conduct its business."

Paragraph six provides that the creditors' committee may grant to the company a further extension of time in which to meet its obligations; and, should any such extension be granted, that the contract for the period thereof shall remain binding upon the parties thereto, provided that no such extension shall be for

a longer period than two years from the date of the agreement.

Paragraphs seven and eight provide that the directors may, by unanimous vote, liquidate the company, and that, in so doing, the stock may be sold.

Paragraph nine provides for a tolling of the statute of limitations. Paragraph ten provides that the agreement should go into effect when, in the opinion of the committee, sufficient creditors had signed to make it workable. Paragraph eleven provides that the board may, in their discretion, pay certain small claims in full.

Paragraph twelve adjusts the disputed claim of W. J. Kaull, and also that of the plaintiff, Terminal Trading Company. In this connection, it was agreed that seventy-eight sacks of turkey wheat, twelve sacks of bart wheat, and one hundred two sacks of rye, then in the possession of the Dennett Milling Company and theretofore furnished by Terminal Trading Company, shall be deemed furnished during the term of the agreement and should be thereafter paid for each month at the regular market price as used; the plaintiff on its part agreeing to take back one hundred twenty-eight sacks of off-grade wheat and give credit to the company in the sum of $280.39.

Paragraph thirteen provides that Babbit, Shaffer, and Farr shall not receive any compensation for their services, but that they might employ Mr. Skillings in connection with the operation of the company's business, provided that his retention should rest in their discretion.

The plaintiff executed the contract or trust instrument by C. W. Nelson, its president and manager. Mr. Nelson testified that he had such confidence in Babbit, Shaffer, and Farr that he signed the instrument without reading it. Even so, he and his company are in

law charged with full knowledge of its contents. Moreover, he was in fact familiar with its substance; for, as the evidence shows, the contract was merely a reduction to writing of the plan agreed upon in the creditors' meeting of February 26th and in the devising of which he took a leading part.

In awarding judgment for the plaintiff, the trial court, as its memorandum opinion shows, was largely influenced by a decision of a judge of the municipal court of city of New York, borough of Manhattan, first district, in the case of *Laun-Dry-Ette Sales Co. v. Fielding,* 119 Misc. 778, 198 N. Y. Supp. 334. That case is said by respondent to be on all fours with this. It is certainly like it in many ways, but, unfortunately, the trust instrument involved in that case is not quoted or its provisions fully stated. We take leave to doubt whether the learned judge who wrote that opinion would have designated the trustees, provided for by the instrument in the case at bar, as "liquidating trustees." They were, it is true, given power to liquidate at discretion, but the instrument also contemplated that the Dennett Milling Company should continue in business, making its own contracts and purchasing materials and supplies for that purpose, and to the end that it might so continue in business, the creditors' committee were authorized to give it a two-year period to meet its obligations; and, it may be added, that this was the course which was actually followed.

At all events, the authorities cited in support of the decision arrived at in the *Laun-Dry-Ette* case do not lead to a similar result when applied to the facts in the instant case. It will not be necessary to discuss the facts of those cases in detail. It will be sufficient to say that they in no way resemble the facts of this case, nor do they resemble the facts in the case in which they are cited, in so far as those facts are

revealed in the opinion. Presumably, they were cited for the general statements of legal principles which they contain.

The opinion quotes extensively from *Taylor v. Davis*, 110 U. S. 330, 28 L. Ed. 163, 4 S. Ct. 147. The respondent, in its brief, makes an even more extensive quotation from the *Davis* case, and says that the rule it depends upon for sustaining the recovery in this case is not found anywhere "more tersely and yet more comprehensively expressed." This comment would seem to be well-deserved, for the rule, its origin and purpose, and the circumstances which call for its application, are all compressed into these two crisp sentences:

"When a trustee contracts as such, unless he is bound no one is bound, for he has no principal. *The trust estate cannot promise; the contract is therefore the personal undertaking of the trustee.*" (Italics ours.)

It is quite clear, then, that the rule is a rule of necessity, resorted to in cases where the trust estate is incapable of contracting.

In the instant case, the trust estate could promise and contract, and it was intended that it should do so. The plaintiff was one of the creators of the trust in the instant case, and, with its fellow creditors, went so far, in an endeavor to preserve the identity of the corporation and its life as a going and operating concern, as to provide in the trust instrument:

"(3) This contract shall also be subject to cancellation by any creditor signing this agreement should the Dennett Milling Company cease or abandon operations . . . "

Neither can there be any doubt but that the parties to the contract, including the plaintiff, intended and agreed that the Dennett Milling Company, in continuing its operations, should purchase materials and sup-

plies, and that such purchase contracts should be *its* contracts.

Paragraph four of the contract speaks of creditors who may become such subsequent to the 7th day of March, 1937, and whose claims "shall grow out of" the securing of supplies and materials, etc., with which to carry on the business of the company. Whose creditors were these to be? It seems clear to us that they were to be creditors of the corporation; for classification is made between the creditors of the corporation who signed the trust instrument and "subsequent" creditors, and the directors of the corporation are authorized to give the subsequent creditors, who furnished materials, supplies, etc., to carry on the business, a preferred position. By no stretch of the imagination can it be reasonably contended that it was intended that the persons who furnished materials and supplies after March 7, 1937, should become the creditors of Babbit, Shaffer, and Farr. It is the respondent's position, however, that regardless of intention, such persons should be held to be their creditors.

We perceive no reason why the expressed intention of the parties should not be given effect. The rule invoked, as warranting a departure from that intention, is not applicable under the circumstances here presented. It cannot be said here that, unless the trustees are bound, no one is bound, or that the trust estate could not promise, and the court, therefore, ought, in the interests of justice, to impose a constructive contract upon the trustees. The trust estate could, and did, promise, and become bound, all in the exact manner contemplated by the trust agreement.

The *Laun-Dry-Ette* case also cites *New v. Nicoll,* 73 N. Y. 127, 29 Am. Rep. 111, which was an action against a trustee of real estate for the value of repairs

made on a building. In the absence of any factual similarity, we take it that the case was cited because it contains the following statement:

"The general rule undoubtedly is that a trustee cannot charge the trust estate by his executory contracts unless authorized to do so by the terms of the instrument creating the trust. Upon such contracts he is personally liable, and the remedy is against him personally."

The grain involved in this action was ordered by the Dennett Milling Company, and invoiced by the plaintiff to the Dennett Milling Company. It cannot be said to be a case where the trustee attempted to charge the trust, except upon the following chain of reasoning: A corporation can only contract through its directors. Babbit, Shaffer, and Farr were the directors of the Dennett Milling Company, and were so only by virtue of being the trustees named in the trust instrument. They, therefore, as such trustees, attempted to charge the trust. But if this be admitted, they were, as we have already pointed out, specifically authorized, by the instrument creating the trust, to buy supplies and materials for the carrying on of the business, for and in the name of, and *as the obligation of,* the Dennett Milling Company.

A third case cited in the *Laun-Dry-Ette* opinion is *Austin v. Munro,* 47 N. Y. 360. It does not appear to be at all in point. An executor was sued on a contract "as executor." The court sustained a demurrer, saying the suit would not lie against him "as executor," and expressly said that whether it could have been maintained against the defendant personally was not before the court.

The fourth case relied on in the *Laun-Dry-Ette* opinion is *Roger Williams Nat. Bank v. Groton Mfg. Co.,* 16 R. I. 504, 17 Atl. 170. Trustees under a will en-

dorsed a note, adding thereto: "Trustees Estate of Amos D. Smith." They were held personally liable on the endorsement, the court saying, in part:

" 'If a trustee contracting for the benefit of a trust estate wants to protect himself from individual liability on the contract, he must stipulate that he is not to be personally liable, but that the other party is to look solely to the trust estate.' "

But, assuming that in this case Babbit, Shaffer, and Farr ordered the grain, rather than the Dennett Milling Company, there was no need to disclaim liability; for, by the contract to which the plaintiff was a party, the liability for materials and supplies furnished to the Dennett Milling Company after March 7th was, by the very terms of the instrument, fixed upon the Dennett Milling Company. The creators of the trust, including the plaintiff, so provided.

The four cases relied upon in the *Laun-Dry-Ette* opinion were decided in 1872, 1878, 1883, and 1889. During the ensuing period, it appears that the attitude of the courts toward the rule under discussion has materially changed. The appellants have called our attention to a passage in Scott on Law of Trusts, a voluminous and authoritative text published in 1939 as the outgrowth of the author's experience as "Reporter on Trusts" for the American Law Institute in its preparation of the restatement of the law of that subject. We quote from Volume 2, § 263, at page 1478:

"The courts, therefore, have been slow to protect the trustee against personal liability, unless the terms of the contract clearly provide that the trustee shall not be personally liable. In refusing to protect the trustee against personal liability, however, they have too frequently imposed a liability upon him which he can hardly have intended to assume and which the other party to the contract can hardly have expected him to assume. The more recent cases, it is believed,

are somewhat more ready to give effect to what is probably the real intention of the parties. It is certainly unjust to the trustee to impose upon him a liability which he did not intend to assume and which the other party to the contract did not believe that he intended to assume. The hardship is there in spite of loose talk in the opinions about *descriptio personarum*. The question in each case, it is submitted, should be whether the parties as reasonable men in the light of the language used and all the circumstances intended that the trustee should be personally liable or intended that the trust estate alone should be reached."

The respondent, on the other hand, by quotation from *Roger Williams Nat. Bank v. Groton Mfg. Co.*, *supra*, one of the supporting decisions cited in the *Laun-Dry-Ette* case, exhorts us not to relax the rules of law:

" 'The situation of the trustees, if the trust estate be insufficient to indemnify them fully for the debts which they have contracted, is indeed hard, but it is one in which they have voluntarily placed themselves, and though we may sympathize with them, we cannot on that account relax the rules of law in their behalf.' "

In disposing of this appeal adversely to respondent's contention, we feel that we do not "relax the rules of law" in any particular, but that we merely refuse to extend the rule relied on by respondent to a state of facts to which, we are convinced, it was never intended to apply.

The judgment appealed from is reversed, and the cause ordered dismissed.

BLAKE, BEALS, MILLARD, and SIMPSON, JJ., concur.