with mindful observation of their back problems.

In addition, Equicor considered the MNA transferrable skills report prepared by an outside consultant. The consultant concluded that, based on plaintiff's employment history, education, transferable skills, and medical restrictions and limitations, she could obtain full time employment in the child care field. In fact, the consultant stated that three out of five currently advertising child care employers were willing to hire a person with plaintiff's qualifications and limitations. The consultant also concluded that plaintiff was suited for positions as a medical office receptionist, a medical office records clerk, a weight loss clinic counselor, or a travel agent, with little or no new training.

Equicor also considered the May 21, 1991 report of Dr. Tillim, submitted by plaintiff during the process of appealing Equicor's termination of benefits. Dr. Tillim stated:

It is my impression that she is unable to perform full-time sedentary work. She can probably perform work up to four hours per day in an atmosphere which would allow her to change position from sitting to standing and would not involve lifting of items more than five pounds.

Upon receipt of Dr. Tillim's new report, Dr. Bruce Raymond reviewed the file at Equicor's request. Dr. Raymond stated:

I believe the claimant is capable of sedentary/light work on a full time basis if she is allowed to walk or stand for brief periods through the workday. In view of Dr. Tillim's statement to the contrary an IME by an orthopedic or neurosurgeon may be an attractive option.

Having considered these reports, Equicor denied plaintiff's appeal but offered to keep the file open if plaintiff agreed to an IME, which plaintiff did not do.

Reviewing the plan administrator's well developed record *de novo*, the court finds that the administrator was clearly correct in determining that plaintiff is not totally disabled as that term is expressly defined by the Syntex plan.[3] Plaintiff is capable of sedentary or light work on a full-time basis in her previous occupation and others closely related to it. Therefore, the administrator was correct in concluding that she was not unable to do any work for compensation or gain for which she was, or could become, reasonably fitted by learning or experience.

## V. *Conclusion*

Having reviewed Equicor's decision to terminate plaintiff's benefits *de novo*, the court finds that plaintiff is not totally disabled under the terms of the Syntex plan. Accordingly, defendant's motion for summary judgment is GRANTED.[4]

IT IS SO ORDERED.

**TRAILER MARINE TRANSPORT CORPORATION, a corporation; Crowley Maritime Corporation, a corporation, Plaintiffs,**

v.

**CHICAGO INSURANCE COMPANY, a corporation, Defendant.**

**No. C–91–3751–CAL.**

United States District Court, N.D. California.

June 1, 1992.

---

Jess B. Millikan, Ernest N. Reddick, Nicole Economou, Derby Cook Quinby & Tweedt, San Francisco, Cal., for plaintiffs.

Amy Jo Poor, Kurt Micklow, Rice, Fowler, Kingsmill, Vance, Flint, & Booth, San Francisco, Cal., for defendant.

## OPINION AND ORDER FOR SUMMARY JUDGMENT

LEGGE, District Judge.

Plaintiffs and defendant have made cross-motions for summary judgment. The motions are essentially reciprocals of one another, and present the issue of whether the antitrust judgment entered against plaintiff Trailer Marine Transport Corporation is covered by the policies of insurance issued by defendant. The motions were argued and submitted to the court for decision. The court has reviewed the record, the moving and opposing papers, the arguments of counsel, and the applicable authorities. The court finds that there are no genuine issues of material fact as to the facts stated below, and the court concludes that as a matter of law the policies do not provide coverage to plaintiffs.

### I.

Plaintiff Trailer Marine Transport Corporation is a wholly owned subsidiary of plaintiff Crowley Maritime Corporation. Defendant issued excess liability insurance policies to Crowley. Their coverage also extended to plaintiff Trailer Marine Transport, as a subsidiary of Crowley.

Policies of primary comprehensive general liability insurance were issued to plaintiffs by Beacon Insurance Company. Beacon is not a party to this case. It is not expressed in the present record, but the court is advised by the parties that Beacon is a so-called "captive" primary insurer organized by plaintiffs, and that plaintiffs gave defendant credit for the policy limits of the Beacon policies in this action against defendant. However, these matters are not necessary to this decision.

The important thing about the primary coverage is the language of the Beacon policies. That is because the policies issued to plaintiffs by defendant were excess to the Beacon coverage, and they adopted and incorporated into the excess policies the coverage language of the primary policies—what is called "following the form" excess coverage. So it is the policy language of the primary policies that must be examined here.

### II.

Trailer Marine, and other entities not material to this dispute, were sued in the United States District Court for the Eastern District of Louisiana. The suit was brought by Zapata Gulf Marine as assignee of American Caribe Lines, Inc. The complaint alleged violations of Sections 1 and 2 of the Sherman Act. At the conclusion of the trial, the jury found that Trailer Marine had violated the Sherman Act and had

caused injury to American Caribe, and the jury awarded a verdict of several million dollars, which verdict was then trebled as provided in the antitrust laws.

The issue here is whether defendant's policies provide coverage for that judgment against Trailer Marine.

## III.

Two portions of the language of the policies are relevant.

In the insuring agreements, defendant agrees to pay any liability of the insured for property damage. The term "property damage" is specifically defined. It expressly includes "loss of or damage to property or other thing" and "loss of ... profits". This is broad insuring language. The policies are not printed forms, but appear to be specifically drafted manuscript-type policies. Most printed forms of comprehensive general liability policies limit property damage coverage to physical loss or physical injury. The insuring agreements of these policies are obviously different, and the difference explains why the issue of insurance coverage for antitrust liability under comprehensive general liability policies arises in this case but has not arisen frequently in the past.

The policies contain a relevant exclusion. They do not provide coverage for liability for property damage "caused intentionally by or at the direction of the Assured."

## IV.

Defendant's motion for summary judgment is based upon that "intentional" exclusion in the policies, and upon two California code sections which prohibit coverage for willful acts. California Insurance Code Section 533 states that "an insurer is not liable for loss cause by the wilful act of the insured." And California Civil Code Section 1668 provides that "all contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or wilful injury to the person or property of another, or violation of law, whether wilful or negligent, are against the policy of the law."

The interpretation of these code sections is a matter of California law. There is a substantial body of California law interpreting the sections, but unfortunately not in the context of business losses. Most deal with bodily injuries.

Defendant claims that the policy exclusion and those two code sections, as a matter of law, preclude coverage of Trailer Marine's antitrust liability. Plaintiffs contend that as a matter of law the liability of Trailer Marine is covered by the policies. The court concludes that defendant is correct.

## V.

The parties dispute the California law on the issue. Plaintiffs contend that the statutes do not exclude coverage unless there is a showing of the insured's specific intent to cause injury. That contention is based upon a 1978 decision of the California Supreme Court, *Clemmer v. Hartford Insurance Company,* 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978). Plaintiffs' reading of *Clemmer,* standing alone, appears to support their argument. However, in 1991 the California Supreme Court had occasion to interpret its *Clemmer* decision in *J.C. Penney Casualty Ins. Co. v. M.K.,* 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689 (1991). This court concludes from the *J.C. Penney* decision that the California Supreme Court does not require a showing of specific intent to cause injury, if the harm was inherent in the act itself. Another judge of this court has so held; *State Farm Ins. Co. v. Ezrin,* 764 F.Supp. 153 (N.D.Cal.1991) at p. 156.

Plaintiffs also cite *California Shoppers Inc. v. Royal Globe Ins. Co.,* 175 Cal. App.3d 1, 221 Cal.Rptr. 171 (Cal.App.1985), as authority for the requirement of a specific intent to injure. However, the *California Shoppers* case was based upon *Clemmer,* and was before the California Supreme Court revisited *Clemmer* in *J.C. Penney.*

## VI.

Was the harm caused to American Caribe, and encompassed in the antitrust

verdict, inherent in the acts for which Trailer Marine was found liable?

This court has a record of the jury's verdict in that case. The jury found that: (1) Trailer Marine knowingly entered into a conspiracy with the other defendants to unlawfully restrain trade, and the conspiracy was a proximate cause of the injury to American Caribe. (2) Trailer Marine had monopoly power in the relevant market; it willfully acquired or maintained that power through restrictive or exclusionary conduct; and that conduct was a proximate cause of injury to American Caribe. (3) Trailer Marine had the specific intent to achieve monopoly power, and its exclusionary or restrictive conduct was in furtherance of that specific intent. (4) There was a dangerous probability that Trailer Marine would succeed in achieving monopoly power in the relevant market. (5) Trailer Marine's attempted monopolization of the relevant market was a proximate cause of injury to American Caribe. (6) Trailer Marine knowingly entered into a conspiracy with the other defendants to monopolize the relevant market, and the conspiracy was a proximate cause of injury to American Caribe. There is no doubt from the verdict that the jury found that Trailer Marine had engaged in conduct which was willful and intentional.

The law on Sections 1 and 2 of the Sherman Act, and the trial court's jury instructions, are consistent with the jury's verdict. The jury was instructed extensively on the elements of violations of Sections 1 and 2. The jury was instructed that in order to find Trailer Marine liable, that company had to knowingly join in a conspiracy to fix prices, and that knowingly meant to act intentionally and to accomplish an unlawful purpose. Violations of Sections 1 and 2 require conduct which rises to the level of intentional or willful conduct. Such conduct is not unlawful unless it is also injurious to competition. And Zapata could recover only by establishing that American Caribe was injured by reason of Trailer Marine's violation of those statutes.

This court therefore concludes that the liability of Trailer Marine was for conduct which was intentional and willful under the language of the policy and under the California Code sections. Indeed, even if plaintiffs' interpretation of California law were correct—that is, requiring a specific intent to injure—the verdict of the jury under the antitrust laws established even that degree of intent.

The result here is consistent with an appellate decision from another circuit, interpreting Alabama law. *St. Paul Ins. Co. v. Talladega Nursing Home*, 606 F.2d 631 (5th Cir.1979). This appears to be the only reported case directly on the question of whether antitrust liability is covered by a liability insurance policy. Plaintiffs cite *Ethicon v. Aetna Casualty Ins. Co.*, 737 F.Supp. 1320 (S.D.N.Y.1990). However, that case is not really in point; in determining whether there was policy coverage, the court looked not to the insured's liability for antitrust damages, but to the elements of the malicious prosecution claim which underlay the antitrust charge.

## VII.

This court therefore concludes that Trailer Marine's liability to Zapata is, as a matter of law, not covered by defendant's policies of insurance. Summary judgment will be entered in favor of defendant and against plaintiffs. It is therefore not necessary for this court to consider the further ground for summary judgment argued by defendant; that is, that defendant did not receive timely notice of the claim.