**UNIFIED WESTERN GROCERS, INC.; Certified Grocers of California, Ltd.; Grocers Specialty Company; Alfred A. Plamann; Charles Pilliter; Daniel T. Bane; Robert M. Ling; and David Woodward, Plaintiffs,**

v.

**TWIN CITY FIRE INSURANCE COMPANY, an Indiana Corporation, Defendant.**

No. CIV. 03–00336HGBMK.

United States District Court, D. Hawai'i.

April 21, 2005.

William C. McCorriston, Christopher J. Cole, Jonathan Harry Steiner, McCorriston Miller Mukai Mackinnon LLP, Honolulu, HI, for Plaintiffs.

Wesley H.H. Ching, Sheree A. Kon–Herrera, Fukunaga Matayoshi Hershey & Ching, Honolulu, HI, Kim West, Tucker Ellis & West LLP, San Francisco, CA, Samantha M. Ball, Tucker Ellis & West LLP, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

GILLMOR, District Judge.

### INTRODUCTION

On June 27, 2003, Unified Western Grocers, Inc. ("Unified Western Grocers"),

Certified Grocers of California, Ltd. ("Certified Grocers"), Grocers Specialty Company ("Grocers Specialty"), Alfred Plamann ("Plamann"), Charles Pilliter ("Pilliter"), Daniel Bane ("Bane"), Robert Ling ("Ling") and David Woodward ("Woodward") (collectively, "Plaintiffs") filed a complaint in the United States District Court for the District of Hawai'i alleging a single cause of action for declaratory relief against Defendant Twin City Fire Insurance Company ("Twin City"). Plaintiffs and Twin City have separately moved for summary judgment on Plaintiffs' complaint. On December 6, 2004, the parties' cross-motions for summary judgment came on for concurrent hearing. Following oral arguments, and for the reasons stated herein, the Court hereby GRANTS Defendant Twin City's Motion and DENIES Plaintiffs' Motion.

### FACTUAL BACKGROUND

This case involves a genuine dispute over whether insurance coverage exists under a directors and officers insurance policy for a lawsuit filed against Plaintiffs by Mark Yee, the bankruptcy trustee for Hawaiian Grocery Stores, Inc. (the "Trustee"), entitled *Yee v. Unified Western Grocers, Inc., et al.*, Civil No. 02–00668 BMK, Bankruptcy Case No. 99–05157 (Chapter 7), Adversary Proceeding No. 01–00057 (the "Trustee Lawsuit").

#### A. *The Twin City Policy*

Twin City issued to the **Directors**[1] and **Officers** of Unified Western Grocers and its **Subsidiaries**, a "Directors, Officers and Company Liability Policy," no. NDA0105226–01, effective for the Policy Period February 1, 2001, to February 21, 2003 (the "Twin City Policy"). [Twin City Policy, Exh. "A."] This claims made policy

provides a limit of liability of $10 million, subject to a company reimbursement retention of $250,000 under Insuring Agreement B. [*Id.*]

Because Unified Western Grocers did not purchase entity coverage, the Twin City Policy does not provide coverage for claims asserted against Unified Western Grocers, Certified Grocers or Grocers Specialty (collectively, the "Corporate Plaintiffs") on account of their own **Wrongful Acts**. [*Id.;* Plaintiffs' Mov. P. at pp. 7–8 and Opp. P. at pp. 5–6.] Moreover, insofar as Unified Western Grocers has agreed to indemnify Plaintiffs Plamann, Pilliter, Bane, Ling and Woodward (collectively, the "Individual Plaintiffs") for any losses they incur in connection with the Trustee Lawsuit, Plaintiffs seek coverage under Insuring Agreement B of the Twin City Policy. [Plaintiffs' Mov. P. at p. 8.]

Insuring Agreement B of the Twin City Policy provides:

> The Insurer will pay on behalf of the **Company Loss** for which the **Company** has, to the extent permitted or required by law, indemnified the **Directors and Officers**, and which the **Directors and Officers** shall become legally obligated to pay as a result of a **Claim** first made during the Policy Period or **Discovery Period**, if applicable, against the **Directors and Officers** for a **Wrongful Act** which takes place during or prior to the Policy **Period**;

[Twin City Policy, § I(B).]

> The Twin City Policy defines **Loss** as:

> [S]ums which the **Directors and Officers** or, with respect to Insuring Agreement (C), the **Company**, are legally liable to pay solely as a result of any **Claim** insured by this Policy, including

---

1. Bold highlight of a discrete term denotes a term that is specifically defined by the Twin City Policy.

**Claims Expenses**, compensatory damages, settlement amounts and legal fees and costs awarded pursuant to judgments, but excluding fines, penalties, taxes, any amount allocated to uncovered Loss pursuant to Section VII. of this Policy, or matters uninsurable pursuant to any applicable law, provided this definition does not exclude punitive or exemplary damages or the multiple portion of any multiplied damage award unless such damages are uninsurable pursuant to applicable law. [Twin City Policy, § IV(J).]

The Twin City Policy defines **Company** as meaning Plaintiff Unified Western Grocers and any **Subsidiary**.[2] [Twin City Policy, § IV(C).] Unified Western Grocers is the successor in interest to Plaintiff Certified Grocers. Plaintiff Grocers Specialty is a former wholly-owned subsidiary of Certified Grocers and is a subsidiary of Unified Western Grocers. [Plaintiffs' Complaint, ¶¶ 2–3; Trustee's Third Amended Complaint, ¶¶ 13–14.] The Twin City Policy defines **Directors** and **Officers** as including the "duly elected or appointed directors or officers of the Company." [Twin City Policy, § IV(D).] The Individual Plaintiffs are alleged to be directors and officers of the **Company**. [Plaintiffs' Complaint, ¶ 12; Trustee's Third Amended Complaint, ¶ 134.] Consequently, coverage under Insuring Agreement B of the Twin City Policy may extend to claims arising from the alleged Wrongful Acts of the Individual Plaintiffs.

The Twin City Policy defines **Wrongful Act** as:

(1) any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty, committed or attempted by the **Directors** and

**Officers**, in their capacity as such, or in an Outside Position, or with respect to Insuring Agreement (C), by the **Company**, or

(2) any matter claimed against the **Directors** and Officers solely by reason of their serving in such capacity or in an Outside Position.

[Twin City Policy, § IV(O).]

The Twin City Policy provides **Outside Position** liability coverage as follows:

Subject to all of its terms and conditions, this Policy covers any **Director** or **Officer** serving in an **Outside Position**, but such coverage shall be specifically excess of any indemnity or insurance available from or provided by the entity in which the Director or Officer serves in such Outside Position.

.     .     .     .     .

"**Outside Position**" means the position of director, officer, trustee or other equivalent executive position held by a **Director** or **Officer** in:

.     .     .     .     .

(ii) any other entity, provided such coverage is specifically granted by endorsement to this Policy,

.     .     .     .     .

if service in such position is with the knowledge and consent or at the request of the **Company**.

[Twin City Policy, § II(D).]

The Twin City Policy further provides: It is agreed the term "**Outside Position**", as defined in Section II.(D), OUTSIDE POSITION LIABILITY EXTENSION, shall include the position of director, officer, trustee, or other equiv-

---

**2.** The Twin City Policy defines "**Subsidiary**" as meaning "any corporation in which more than fifty percent (50%) of the outstanding Securities or voting rights representing the present right to vote for election of Directors or equivalent position is owned" by Unified Western Grocers. [Twin City Policy, § IV(N).]

alent executive position held by a **Director** or Officer in the following entities if service in such position is with the knowledge and consent or request of the **Company**:

. . .

*Director and/or Officer   Outside Organizations*

. . .

Dan Bane                    Hawaiian Grocery
                            Stores, Inc.

. . .

All other terms and conditions of this policy remain unchanged.

[Twin City Policy, Endorsement No. 3.]

However, with respect to **Outside Position** coverage, the Twin City Policy contains the following "outside capacity" exclusion:

> The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the **Directors** and **Officers** . . . for, based upon, arising from, or in any way related to such **Directors** and **Officers** serving as a director, officer, trustee, regent, governor or employee of any entity other than the **Company** even if such service is at the direction or request of the **Company**, provided this exclusion does not apply with respect to a **Claim** for a **Wrongful Act** by a **Director** or **Officer** while serving in an **Outside Position** if such **Claim** is brought and maintained without the solicitation, assistance or participation of the entity in which the **Director** or **Officer** serves in the **Outside Position** or any director, officer, trustee, regent, governor or employee of such entity;

[Twin City Policy, § V(F).]

### B. *The Trustee Lawsuit*

The Trustee Lawsuit outlines complex financial transactions and relationships between the parties which occurred between January 1990 and December 1999. The operative pleading is the Trustee's Third Amended Complaint filed on June 24, 2004.

The Trustee alleges that in January 1990 Certified Grocers, in its capacity as a subsidiary of Unified Western Grocers and through its wholly-owned subsidiary, Grocers Specialty, acquired all of the equity shares of Hawaiian Grocery Stores, Inc. ("HGS"). [Trustee's Third Amended Complaint, ¶¶ 13–14, 20.]

The Trustee contends that, over the course of the next six years, Certified Grocers managed HGS as its wholly owned subsidiary. [Trustee's Third Amended Complaint, ¶ 23.] However, according to the Trustee, under Certified Grocer's stewardship, HGS' financial condition deteriorated to the point that it failed to generate a positive cash flow from its operating activities and became overburdened with debt. [Trustee's Third Amended Complaint, ¶¶ 24–26.]

The Trustee asserts that by 1996 HGS faced irreversible insolvency and liquidation unless it could capitalize and greatly expand its share of the local market, which seemed unlikely. [Trustee's Third Amended Complaint, ¶ 27.] The Trustee alleges that, as a result, Certified Grocers embarked on a series of financial transactions to take as much money as possible out of HGS before it collapsed, thus rendering HGS insolvent (the "Transactions"). [Trustee's Third Amended Complaint, ¶¶ 28–29.]

The Trustee contends that, to facilitate the Transactions, on May 14, 1996, the Individual Plaintiffs, who were each then serving as directors and/or officers of Certified Grocers, were appointed to the HGS Board of Directors. [Trustee's Third Amended Complaint, ¶¶ 3–7, 30, 120–125, 134–140.] According to the Trustee, shortly after their appointment to the HGS Board, the Individual Plaintiffs fraudulently altered and amended HGS' articles of

incorporation for the purpose of giving Certified Grocers: (1) greater voting rights and preferred dividend payments over HGS' other principle shareholder, RHL Inc. ("RHL"); and, (2) the right to elect a majority number of directors. [Trustee's Third Amended Complaint, ¶¶ 31–50, 71–75.] The Trustee further alleges that the Individual Plaintiffs then created a series of new financial instruments in HGS that shifted assets and control of the company away from HGS' shareholders and to Certified Grocers. [Trustee's Third Amended Complaint, ¶¶ 43–50.] According to the Trustee, these instruments forced HGS to: (1) borrow large amounts of money to fund a leveraged buy-out of the HGS shares controlled by Certified Grocers (that had no value); (2) fund above-market rental payments on a sublease to Grocers Specialty; and, (3) fund payments on a $5.3 million promissory note held by Certified Grocers. [Trustee's Third Amended Complaint, ¶¶ 44, 53, 131, 146.]

The Trustee asserts that, as a result of these instruments: (1) cash was taken out of HGS by Certified Grocers, with no value being given back to HGS; (2) useless operating expenses continued to be incurred to give the appearance that HGS was a going concern; and, (3) Plaintiffs were provided money and opportunities to take assets away from HGS for their cooperation with the scheme. [Trustee's Third Amended Complaint, ¶ 79.] Additionally, the Trustee complains that what thin margin HGS earned all went to Certified Grocers, leaving nothing for HGS' other principle shareholder, RHL. [Trustee's Third Amended Complaint, ¶¶ 76–79.]

The Trustee contends that these Transactions culminated with the May 28, 1996, sale by Certified Grocers of its stake in HGS to RHL. [Trustee's Third Amended Complaint, ¶¶ 64, 85, 126, 130, 141, 145.] The Trustee further alleges that, after the

sale, the company continued operations under the name until the time of its Chapter 7 bankruptcy filing in December 1999. [Trustee's Third Amended Complaint, ¶ 9.]

The Trustee contends that, to facilitate their scheme, the Individual Plaintiffs hired Richard Loeffler, an alter ego of RHL, as President and a director of HGS, effective May 28, 1996, for the purpose of ensuring that Certified Grocers would continue to receive cash from HGS after its sale to RHL. [Trustee's Third Amended Complaint, ¶¶ 8–9, 51–62, 81–82.] The Trustee alleges that, shortly thereafter, all of the Individual Plaintiffs except Bane resigned their positions as directors of HGS. [Trustee's Third Amended Complaint, ¶¶ 3–6.]

According to the Trustee, after the sale of HGS to RHL, and in a continuing effort to conceal Plaintiffs' scheme to strip HGS of its assets and funnel them over to Certified Grocers, the management of HGS (including Bane) allegedly generated false financial reports that materially overstated HGS' financial condition as of December 31, 1996 and 1997, for the purpose of misrepresenting HGS' creditworthiness. [Trustee's Third Amended Complaint, ¶¶ 94–116.] The Trustee complains that, as a result of these misrepresentations, Coast Business Credit ("Coast") extended a $10 million line of credit to HGS. [Trustee's Third Amended Complaint, ¶¶ 110–111.]

The Trustee alleges that under this scheme, Certified Grocers retained control over HGS, through its conspiratorial relationship with RHL, and used this position to obtain large payments on its antecedent investment that would likely not have been repaid had HGS been liquidated or sold at a nominal price in 1996. [Trustee's Third Amended Complaint, ¶ 106.] The Trustee further alleges that before and after Certified Grocers' sale of HGS, Plaintiffs com-

mitted, and/or aided or abetted in the commission of, wrongful acts designed to implement their scheme to loot HGS of assets and cause its irreversible insolvency through its accelerated incursion of $13.5 million of debt. [Trustee's Third Amended Complaint, ¶¶ 43–45, 51, 64, 77–79, 108–118, 145–147, 154–157,188–190, 238–239 and 253–260.]

Based on these allegations, the Trustee Lawsuit asserts the following claims against Plaintiffs: (1) breach of fiduciary duties; (2) aiding and abetting breach of fiduciary duties; (3) conspiracy; (4) alter ego liability; and, (5) unjust enrichment. [Trustee's Third Amended Complaint, ¶¶ 133–147, 153–157, 186–190, 238–239, 253–260.] Essentially, the Trustee claims that Plaintiffs breached fiduciary duties they owed to HGS and were unjustly enriched by their actions, thus warranting the rescission of the Fraudulent Transactions and the imposition of a restitution order. [Trustee's Third Amended Complaint, ¶¶ 252, 260, Prayer for Relief B.]

### C. *The Trustee Entity–Only Litigation*

In addition to the Trustee Lawsuit, the Trustee is concurrently prosecuting a separate adversary proceeding against the Corporate Plaintiffs only entitled *Yee v. Unified Western Grocers, Inc., et al.,* Bankruptcy Civil No. 02–00164 HG BMK, Bankruptcy Case No. 99–05157 (Chapter 7), Adversary Proceeding No. 01–0079 (the "Trustee Entity–Only Litigation"), for preference claims, fraudulent transfer and fraud. [Kon–Herrera Decl, Exh. "4."] The operative pleading in the Trustee Entity–Only Litigation is the Fourth Amended Complaint.

The Trustee Entity–Only Litigation is based upon the same facts, circumstances and transactions as are at issue in the Trustee Lawsuit. [*Id.*]. By way of damages, the Trustee seeks an order avoiding

the preferential transfers and ordering the Corporate Plaintiffs to pay $13.5 million for injuries sustained "while Certified [Grocers] drained the remaining assets out of HGS from 1996 to 1999 when it went into Bankruptcy." [Trustee's Fourth Amended Complaint, Prayer for Relief A.]

By this Court's order, dated July 2, 2004, Value Recovery Group, L.P. ("VRG") was joined as a co-plaintiff to the Trustee Lawsuit and the Trustee Entity–Only Litigation. [Kon–Herrera Decl., Exh. "6."] VRG is the assignee of Coast's causes of action against Plaintiffs. [Trustee's Third Amended Complaint, ¶¶ 2, 241–243.]

### D. *The Parties' Contentions Concerning Coverage*

Plaintiffs allege that Twin City wrongfully refused to indemnify Plaintiffs in connection with the Trustee Lawsuit. [Plaintiffs' Complaint, ¶ 23.] Twin City counters that Exclusion F precludes coverage for the Trustee Lawsuit. [Twin City's Mov. P. at pp. 16–27 and Opp. P. at pp. 21–27.] Twin City further contends that, even if coverage were not otherwise excluded, it has no duty to indemnify Plaintiffs because the Trustee Lawsuit seeks to compel Plaintiffs to return funds to which they were never entitled in the first place, and such repayment or restitution cannot constitute compensable Loss within the plain meaning of the Twin City Policy's basic insuring agreement. [Twin City's Opp. P. at pp. 12–21 and Reply P. at pp. 14–15.]

Plaintiffs now move for summary judgment on the issue of whether the Twin City Policy provides coverage for the Trustee Lawsuit. Twin City has concurrently moved for summary judgment on Plaintiffs' complaint.

### *LEGAL STANDARD*

Summary judgment is appropriate when there is no genuine issue as to any materi-

al fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file [in the case] that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.*, 809 F.2d at 630; FED. R. CIV. P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

When parties submit cross-motions for summary judgment on the same claim or issue, each motion must be considered on its own merits and analyzed separately under Rule 56. *See Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.2001). The court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on the motions. *Id.*

### ANALYSIS

#### A. *The Court Has Discretionary Jurisdiction Over Plaintiffs' Declaratory Relief Action*

■ Under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994), a district court has discretion to decline to exercise jurisdiction over an action for declaratory relief. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). In exercising its discretion, "[t]he district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir.1998) (footnote omitted). "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance cases specifically." *Id.*

Although the parties have not objected to the Court's exercise of jurisdiction, the Court has considered the matter *sua sponte* and determined that it has constitutional and statutory jurisdiction to hear Plaintiffs' declaratory relief action. Plaintiffs' complaint presents an actual case or controversy within the meaning of Article III, Section 2 of the United States Constitution, and appears to have been brought for a legitimate purpose. There is complete diversity between Plaintiffs and Twin City and the amount in controversy is more than $75,000.

■ Additionally, the factors enumerated in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), support the Court's exercise of jurisdiction in this matter. First, Plaintiffs' declaratory relief action will not result in any entanglement between the federal and state court systems because all of the underlying litigation is venued in federal court, and there are no parallel state court proceedings. Second, the declaratory relief action presents issues that are neither parallel nor duplicative of those sought to be adjudicated in the underlying litigation, and appears not to have been filed to obtain any per-

ceived or actual procedural advantage over the underlying claimants. Finally, the resolution of the declaratory relief action will not implicate novel or complex questions of state law.

Because the constitutional and statutory jurisdictional prerequisites to hear a case brought pursuant to the Declaratory Judgment Action have been satisfied, this Court will retain jurisdiction over Plaintiffs' declaratory relief action.

### B. *California Law Governs Policy Interpretation*

■ In a diversity case, a federal court ordinarily must apply the choice of law rule of the state in which it sits. *DeRoburt v. Gannett Co., Inc.*, 83 F.R.D. 574, 576 (D.Haw.1979). Hawaiʻi resolves its conflict of law issues by deciding which state has the strongest interest in seeing its law applied to a particular case. *Lewis v. Lewis*, 69 Haw. 497, 748 P.2d 1362 (1988); *Peters v. Peters*, 63 Haw. 653, 634 P.2d 586 (1981). Plaintiffs contend that Hawaiʻi law applies because (1) the Individual Plaintiffs were the directors of HGS, a Hawaiʻi corporation which petitioned for bankruptcy protection in Hawaiʻi; and, (2) the Trustee Lawsuit is being litigated in Hawaiʻi. [Plaintiffs' Mov. P. at pp. 16–18 and Opp. P. at p. 6.] Twin City counters that California has the most significant relationship to the subject insurance contract because: (1) the Twin City Policy was negotiated and formed between Twin City and Unified Western Grocers in California; (2) the Twin City Policy was issued to Unified Western Grocers, a California-based corporation; and, (3) all of the Corporate Plaintiffs are California corporations and, with the exception of Woodward (who is a citizen of Texas), each of the Individual Plaintiffs is a California citizen. [Twin City's Mov. P. at pp. 13–14.]

■ The Court finds that Twin City is correct. While it is true that HGS was a Hawaiʻi corporation and the Trustee Lawsuit is being litigated in Hawaiʻi, the instant coverage action seeks the interpretation of a pre-bankruptcy, non-core insurance contract that was negotiated between two non-debtors and issued in California. Additionally, Plaintiffs are primarily based in California, and the subject financial transactions and decision making process originated from and took place in California. As a result, the parties' contacts with California overcome the presumption that Hawaiʻi law applies.

■■ Under California law, the fundamental goal of insurance policy interpretation is to determine "the mutual intention of the parties at the time [of] contract ... formation." *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 821, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990); *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). Rather than applying abstract interpretations to policy language, the courts "interpret [insurance policy] language in context, with regard to its intended function in the policy." *Bank of the West*, 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545. If an ambiguity remains after such a contextual analysis, under California law, the ambiguity is not automatically construed against the insurer; rather it is to be interpreted in the manner in which the insurer believed the insured understood it. Only if the application of this final rule does not resolve the ambiguity may the courts adopt the interpretation resulting in coverage. *Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1291 (9th Cir. 1996) (applying California law); *Bank of the West*, 2 Cal.4th at 1264–65, 10 Cal. Rptr.2d 538, 833 P.2d 545.

As a result, the "reasonable expectations of the insured" rule does not apply where

the issue can be resolved under the "plain meaning" rule, and the "contra-insurer" rule generally does not apply where the ambiguity can be resolved in accordance with the insured's "objectively reasonable expectations." *Bank of the West,* 2 Cal.4th at 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545 (the court cautioned against relying on contra-insurer rule too early in the process).

## C. *The Trustee Lawsuit Does Not Seek Compensable Loss*

The Court first turns to Twin City's contention that, as a matter of public policy, insurance is simply not available for the Trustee Lawsuit because it seeks restitution in the form of disgorgement of the proceeds of the Transactions. [Twin City's Opp. P. at pp. 12–21.] In response, Plaintiffs argue that the Trustee Lawsuit seeks non-restitutionary relief from the Individual Plaintiffs. [Plaintiffs' Mov. P. at pp. 33–36 and Reply P. at pp. 1–9.]

### 1. *Restitution is not insurable as a matter of law*

■ The Court concludes that, as a matter of law, restitution of an "ill-gotten gain" is not insurable. In California, "[i]t is well established that one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired." *Bank of the West,* 2 Cal.4th at 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545. The policy behind such a rule is that:

> When the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrongdoer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law. Otherwise, the wrongdoer would retain the proceeds of his illegal acts, merely shifting his loss to an insurer.

*Id.* at 1269, 10 Cal.Rptr.2d 538, 833 P.2d 545, citing *Jaffe v. Cranford Ins. Co.,* 168 Cal.App.3d 930, 935, 214 Cal.Rptr. 567 (1985).

In fact, in *Pan Pacific Retail Properties, Inc. v. Gulf Insurance Company,* Civil No. 03–CV–679–WQH (WMc), 2004 WL 2958479 (S.D.Cal. Jul.14, 2004), the Southern District Court for California, applying *Bank of the West* and its progeny, reconfirmed that damages associated with the restoration of "ill-gotten gain" are uninsurable as a matter of law. The *Pan Pacific* decision is particularly instructive because it dealt with the question of coverage for restitutionary claims for relief under a Twin City D & O policy. There the court held that "[b]ased on *Bank of the West, Level 3* and other cases the Court concludes that insurance coverage is not available for restoration of an 'ill-gotten gain'." As a result, the court determined that, because the underlying plaintiffs' claims were restitutionary in nature, they were not recoverable under the Twin City policy.

The *Bank of the West* and *Pan Pacific* decisions represent the majority view on this issue. *See, e.g., Level 3 Communications, Inc. v. Federal Ins. Co.,* 272 F.3d 908, 910 (7th Cir.2001) (the court found that "a 'loss' within the meaning of an insurance contract does not include the restoration of an ill-gotten gain"); *Republic Western Ins. Co. v. Spierer, Woodward, Willens, Denis & Furstman,* 68 F.3d 347, 352 (9th Cir.1995) (the court determined that restitutionary payments are not insurable as a matter of law); *Reliance Group Holdings, Inc. v. National Union Fire Ins. Co.,* 188 A.D.2d 47, 594 N.Y.S.2d 20, 24 (1993) (the court confirmed that "one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired"); *Local 705 International Brotherhood of Teamsters Health & Welfare Fund v. Five Star Managers, L.L.C.,* 316 Ill.App.3d 391, 249 Ill.

Dec. 75, 735 N.E.2d 679, 683 (2000) (the court held that, when an insured is "required to return those monies which it had no right to possess in the first place[, s]uch a payment can hardly be termed a loss. Nor can such payment create a deprivation [to the insured] any more so than any borrower can be said to suffer a deprivation from being required to repay an indebtedness.").

Twin City relies heavily on the leading Seventh Circuit decision in *Level 3 Communications, Inc. v. Federal Insurance Company*, 272 F.3d 908 (7th Cir.2001). In *Level 3*, the insured made a claim under its D & O policy following its settlement of a lawsuit brought against it by former shareholders in an acquired company who alleged that the insured had obtained the acquired company by false pretenses and false representations. The D & O insurer argued that the settlement was not a "loss" within the meaning of the policy because the underlying lawsuit was restitutionary in character. The insurer asserted that "[i]t's as if … [the insured] had stolen cash from [the plaintiffs] and the other shareholders and had been forced to return it and were now asking the insurance company to pick up the tab." *Level 3*, 272 F.3d at 910, The insurer further argued that a D & O policy is "designed to cover only losses that injure the insured, not ones that result from returning stolen property, and that if such an insurance policy did insure a thief against the cost to him of disgorging the proceeds of the theft it would be against public policy and so would be unenforceable." *Id.*

The Seventh Circuit agreed with the insurer and held that a D & O policy does not cover the settlement of a securities fraud claim brought by shareholders where the relief sought was akin to restitution, even if the complaint was framed to request money damages. The court found that a D & O policy is designed to cover only losses that injure the insured, not ones that result from an insured returning ill-gotten gain. Writing for the Seventh Circuit, Judge Posner stated:

> It is true, as *Level 3* emphasizes, that the plaintiffs in the underlying suit were not seeking either the return of the shares that *Level 3* had allegedly winkled them out of or the value of the shares on the date they were purchased. They were seeking the difference between the value of the stock at the time of trial and the price they had received for the stock from *Level 3*. That is *standard damages relief in a securities-fraud case*. But *it is restitutionary in character. It seeks to divest the defendant of the present value of the property obtained by fraud, minus the cost to the defendant of obtaining the property.* In other words, it seeks to deprive the defendant of the net benefit of the unlawful act, the value of the unlawfully obtained stock minus the cost to the defendant of obtaining the stock. It is equivalent to seeking to impress a constructive trust on the property in favor of the rightful owner. *How the claim or judgment order or settlement is worded is irrelevant. An insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than "stolen" is used to characterize the claim for the property's return.*

*Id.* at 910–911 (emphasis added).

The Court finds that *Level 3* is noteworthy for the following reasons: (1) even though there was no showing that the individual defendants in the underlying action were personally enriched, Judge Posner held that the "loss" was uninsurable as a matter of public policy; (2) Judge Posner cited *Bank of the West* for the proposition

that a "loss" within the meaning of an insurance contract does not include an ill-gotten gain; and, (3) Judge Posner held that "how the claim or judgment order or settlement is worded is irrelevant" if the relief sought is restitutionary in character.

Based on *Bank of the West, Level 3,* and their progeny, the Court concludes that, as a matter of law, coverage under the Twin City Policy is not available for restitution by Plaintiffs of any "ill-gotten gain."

Section 533 of the California Insurance Code also provides a basis for denying coverage. Section 533 states that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents[.]" Cal. Ins.Code § 533 (West 1993). "[T]he rationale of section 533 is that the wrongdoer as a matter of public policy should not profit from his own wrong, or ... be indemnified against the effects of his wrongdoing." *Dart Indus., Inc. v. Liberty Mut. Ins. Co.,* 484 F.2d 1295, 1298 (9th Cir. 1973).

■ Courts applying California law have often held that § 533 forecloses insurance coverage for wilful acts in a business context. In *California Amplifier, Inc., v. RLI Ins. Co.,* 94 Cal.App.4th 102, 117, 113 Cal.Rptr.2d 915 (Cal.App.2001), the court held that § 533 prohibited insurance coverage for liability incurred by making false statements intended to manipulate a stock price. In *Aetna Cas. and Sur. Co. v. Sup.Ct.,* 19 Cal.App.4th 320, 331, 23 Cal.Rptr.2d 442 (1993), the court held that inducing patent infringement was a wilful act and insurance coverage was foreclosed by § 533. *See also Intex Plastics Sales Co. v. United Nat'l Ins. Co.,* 23 F.3d 254, 257 (9th Cir.1994)(no coverage for wilful patent infringement); *Employers Ins. of Wausau v. Musick, Peeler, & Garrett,* 871 F.Supp. 381, 386 (S.D.Cal. 1994)(no indemnification for fraud or negli-

gent misrepresentation); *Trailer Marine Transp. Corp. v. Chicago Ins. Co.,* 791 F.Supp. 809, 812 (N.D.Cal.1992)(wilful antitrust violations).

### 2. *The relief sought by the Trustee is restitutionary in character and therefore not insurable as a matter of law*

Twin City argues that Individual Plaintiffs can suffer no Loss within the meaning of the Twin City Policy because: (1) being compelled to return property they assisted in stealing is uninsurable as a matter of law; and, (2) the Corporate Plaintiffs are alleged to have obtained ill-gotten gain from the fraudulent Transactions via their conspiracy with the Individual Plaintiffs and would receive a windfall if they are able to retain the proceeds from the Transactions and shift the loss to Twin City. [Twin City's Opp. P. at pp. 12–21.] By contrast, Plaintiffs assert that because the Trustee has not asserted that the Individual Plaintiffs were personally enriched, any loss they sustain as a result of the Trustee Lawsuit is insurable as a matter of law. [Plaintiffs' Opp. P. at pp. 33–36 and Reply P. at pp. 1–10.]

■ The Court concludes that there is no triable issue of any genuine material fact on this issue. Moreover, the Court agrees with Twin City and disagrees with Plaintiffs because: (1) the Trustee Lawsuit affirmatively alleges that the Individual Plaintiffs were unjustly enriched; and, (2) the Trustee's June 22, 2004, amended response to Unified Western Grocers' request for admissions confirms that the Trustee is pursuing relief from the Individual Plaintiffs that is restitutionary in character.

Specifically, the Court finds that the Trustee alleges that the Individual Plaintiffs were personally enriched. In Count 19 of the Trustee Lawsuit, the Trustee affirmatively alleges that the Corporate

and Individual Plaintiffs "entered into a continuing conspiracy, or one or more conspiracies, aimed at obtaining money from HGS with the view that all or much of that money would be funneled to Unified Western Grocers or Certified, with Coast being largely or in part unpaid." [Trustee's Third Amended Complaint, ¶ 254.] According to the Trustee, the Corporate and Individual Plaintiffs "aided and abetted each other in accomplishing said goal." [Trustee's Third Amended Complaint, ¶¶ 246, 255.] As a result, the Corporate and Individual Plaintiffs "have been unjustly enriched and the court should order restitution." [Trustee's Third Amended Complaint, ¶¶ 252, 260.] In fact, in his general Prayer for Relief, the Trustee requests, on all causes of action, "[t]hat the Court rescind the Transactions and Coast's Loan and the disposition of [the Estate's] proceeds and order restitution to [the Estate]." [Trustee's Third Amended Complaint, Prayer for Relief B.]

Additionally, in the Trustee Entity–Only Litigation, the Trustee alleges that the Individual Plaintiffs "were provided money and opportunities to take assets from HGS for their cooperation with the plan." [Kon–Herrera Decl., Exh. "4" at ¶ 77.] Essentially, through the Trustee Lawsuit, the Trustee wants Plaintiffs to disgorge all of the money that they took from HGS. As discussed at length above, *Bank of the West* and *Level 3* stand for the proposition that, as a matter of public policy, restitution is not covered under a D & O policy because an insured cannot suffer loss with respect to costs associated with the disgorgement of funds it had no right to possess in the first place. In fact, Judge Posner instructs that, regardless of how a claim is worded, if the relief sought is restitutionary in *character*, it is not insurable as a matter of law.

Here, through the Trustee Lawsuit and the Trustee Entity–Only Litigation the Trustee seeks relief that is restitutionary in character; namely, the return by all Plaintiffs of the monies improperly funneled to the Corporate Defendants as a result of and flowing from the Corporate and Individual Plaintiffs' conspiracy and scheme to loot HGS and strip it of all of its assets. The Court finds that the Trustee's discovery response in the Trustee Lawsuit in which he affirmatively states that each of the Individual Plaintiffs "received their salaries and bonuses from Certified for the work they did while serving as the officers and directors of HGS" is consistent with these allegations. *See In re Richmond Produce Co., Inc.*, 118 B.R. 753 (Bankr. N.D.Cal.1990) (the court held that a bankruptcy trustee can recover the value of the voidable transfer from a third party, even if the trustee cannot prove that the third party had actually received the property transferred or its proceeds; the trustee need only demonstrate that the third party received "some benefit" as a result of the transfer); *Jarvis Christian College v. National Union Fire Ins. Co.*, 197 F.3d 742 (5th Cir.1999) (in the context of a personal profit exclusion, the court found that a corporate officer's receipt of salary as a result of a fraudulent scheme is a form of personal enrichment). As a result, the Court concludes that, because the Trustee seeks relief from the Individual Plaintiffs that is restitutionary in character, they have not incurred a covered **Loss**.

The Court finds that this result is supported by two additional facts. First, each of the Individual Defendants is an important figure in the corporate structure of the Corporate Defendants. Plamann was Certified Grocers' Chairman of the Board, with Bane serving as its Chief Financial Officer. Additionally, Pilliter was Certified Grocers' Senior Vice President, with Ling serving as its General Counsel and Woodward acting as its Treasurer/Assistant Secretary. [Trustee's Third Amend-

ed Complaint, ¶ 134.] The Court finds the Individual Defendants' active role and participation in the Corporate Defendants' senior management structure and decisions making process are additional compelling factors.

Second, the Corporate Plaintiffs—who are uninsured for their own wrongful acts, but seek insurance coverage from Twin City for the wrongful acts of their most senior directors and officers[3]—would receive a windfall if they were able to retain the proceeds from the scheme to loot HGS and shift the loss to Twin City under the guise that they constitute covered loss as to their insured co-conspirators.

Because the Trustee's claims for relief against Plaintiffs focus on the restitution to the bankruptcy estate of the value of the assets stripped from HSG by Plaintiffs, the Court concludes that the monetary relief sought by the Trustee Lawsuit is restitutionary in character and not insurable as a matter of law.

### D. *Exclusion F Unambiguously Precludes Coverage For Plaintiff Bane*

The Court next turns briefly to Plaintiffs' contention that Exclusion F has no bearing on coverage whatsoever because: (1) the exclusion cannot apply to any claim for breach of fiduciary duties; (2) the exclusion is inapplicable to claims made by a bankruptcy trustee; and, (3) the exclusion is limited to claims brought by or on behalf of the Company. [Plaintiffs' Mov. P. at pp. 20–33, Opp. P. at pp. 6–24, and Reply P. at p. 14.] Twin City asserts that Plaintiffs' analysis is not supported by the applicable law or the facts of this case and that the Trustee's allegations

against Bane fall squarely within the ambit of the exclusion. [Twin City's Mov. P. at pp. 16–29, Opp. P. at pp. 21–28 and Reply P. at pp. 2–15.] The Court agrees with Twin City and disagrees with Plaintiffs.

First, Exclusion F is an enforceable outside capacity exclusion. *See, e.g., Continental Cas. Co. v. Adams,* 2003 WL 22162379 (M.D.Pa. Sept.12, 2003) (the court held that a provision excluding coverage for loss in any way involving actual or alleged conduct in discharge of duties for any entity other than the insured entity applied to individuals sued in their capacities as directors and officers of both insured and uninsured entities).

Second, because the policy definition of **Wrongful Act** includes "allegations," under the plain language of Exclusion F, the allegations by the Trustee of a breach of duty by Bane in an HGS capacity triggered the exclusion.

Third, an "outside capacity" exception to Exclusion F provides that the exclusion "does not apply with respect to a **Claim** for a **Wrongful Act** by a **Director** or **Officer** while serving in an **Outside Position** if such **Claim** is brought and maintained without the solicitation, assistance or participation of the entity in which the **Director** or **Officer** serves in the **Outside Position** or any Director, Officer, trustee, regent, governor or employee of such entity." Although the Court concludes that the "outside capacity" exception potentially applies because Bane is identified in Endorsement 3 as a person who is serving in a covered **Outside Position**, the inquiry does not stop there. The "outside capacity" exception is negated where, as here, Bane has been sued by "any . . . trustee" of HGS.

---

**3.** The parties are in agreement that, because the Twin City Policy does not provide entity coverage to the Corporate Plaintiffs, it does not afford coverage for any of the claims for relief asserted by the Trustee against the Cor-

porate Plaintiffs on account of their separate wrongdoing. As a result, coverage for this matter is properly determined under the company reimbursement provisions of Insuring Agreement B.

Twin City has demonstrated to the Court's satisfaction that the plain, ordinary, and common usage of the term "trustee" has generally included any person in whom some estate or property is vested for another. *See, e.g., Greenough v. Tax Assessors of City of Newport,* 331 U.S. 486, 494, n. 19, 67 S.Ct. 1400, 91 L.Ed. 1621 (1947) (the Court held that "[a] trustee may be defined generally as a person in whom some estate interest or power in or affecting property is vested for the benefit of another."); *Taylor v. Mayo,* 110 U.S. 330, 335, 4 S.Ct. 147, 28 L.Ed. 163 (1884) (same); *Joseph Rosenbaum, M.D., Inc. v. Hartford Fire Ins. Co.,* 104 F.3d 258, 262 (9th Cir.1996), citing RESTATEMENT (SECOND) OF TRUSTS § 3 (1959) ("A trustee is a person who holds some res in trust for a beneficiary."); *Kaiser v. First Hawaiian Bank,* 30 F.Supp.2d 1255, 1265 (D.Haw. 1997) (the court stated that "[t]he term 'trust' is a very broad and comprehensive one," that "[a] trust is a relation between two persons, by virtue of which one of them as trustee holds property for the benefit of the other."); Bankruptcy Act, 11 U.S.C. § 323(a) ("The trustee in a case under this title is the representative of the estate.").

Moreover, Exclusion F explicitly, and without limitation, applies to any **Claim** brought by "any" trustee of HGS. The common usage of the adjective "any" includes "one or more without specification or identification," "every," and "all." *See* WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICT. OF THE ENGLISH LANGUAGE (1996) at 96; *in accord, California State Auto. Ass'n Inter-Ins. Bureau v. Warwick,* 17 Cal.3d 190, 130 Cal.Rptr. 520, 550 P.2d 1056, 1058 (1976) (the California Supreme Court stated that "[f]rom the earliest days of statehood, we have interpreted 'any' to be broad, general and all embracing"). Because "any" is the adjective expressing a property of the noun "trustee," a contextual reading of the provision requires that the word "trustee" be given its broadest, most inclusive meaning to include "every" and "all" trustee(s). Consequently, the Court finds that the plain meaning of the term "trustee" necessarily includes the Chapter 7 bankruptcy trustee of HGS.

Finally, Exclusion F is not limited to claims made "by or on behalf" of the **Company.** The cases Plaintiffs rely on are distinguishable based on the specific exclusionary language considered therein and therefore have no bearing on the issue presented here.[4]

---

4. Plaintiffs' Mov. P. at pp. 31–33, Opp. P. at pp. 12–16 and Reply P. at pp. 11–12. *See, e.g., Gray v. Executive Risk Indem., Inc. (In re Molten Metal Technology, Inc.),* 271 B.R. 711, 718 (Bankr.D.Mass.2002) (The subject policy's "insured versus insured" exclusion excludes from coverage claims brought by any Insured or by the Company.); *Reiser v. Baudendistel (In re Buckeye Countrymark, Inc.),* 251 B.R. 835, 838 (Bkrtcy.S.D.Ohio 2000) ("The insurer shall not be liable to pay Loss in connection with any claim made against the Directors, Officers or Manager ... which is brought by or on the behalf of the Insured[.]"); *In re Pintlar Corp.,* 205 B.R. 945, 947 (Bankr.Idaho 1997) (The subject policy's " 'insured v. insured' exclusion prevents one insured, such as a corporation, from suing another insured, such as an officer or di-

rector."); *In re County Seat Stores, Inc.,* 280 B.R. 319, 324 (Bankr.S.D.N.Y.2002) ("Exclusion 4(i) provides that the insurer shall not be liable to make any payment for loss in connection with a claim made against an insured 'which is brought by any insured or by the company; or which is brought by any security holder of the company.' "); *Alstrin v. St. Paul Mercury Ins. Co.,* 179 F.Supp.2d 376, 384 (D.Del.2002) ("Exclusion 4(i) excludes from coverage any claim made against an Insured 'which is brought by any Insured or by the Company ....' "). One of the cases Plaintiffs' cite from at length—*In re Fidelity Am. Fin. Corp.,* 43 B.R. 74 (Bankr.E.D.Pa.1984), which addressed whether the court should approve the settlement of a controversy involving a

**E.** *Plaintiffs' Declaratory Relief Action Does Not Seek An Adjudication Of Coverage With Respect To VRG's Claims*

The Court finds that Plaintiffs' declaratory relief action does not seek an adjudication of coverage against Twin City with respect to the claims asserted in the Trustee Lawsuit by VRG. [Plaintiffs' Complaint, ¶¶ 18–24, Prayer for Relief.] As a result, the Court declines to make any findings with respect to coverage under the Twin City Policy for VRG's claims, as such issues are outside the scope of the operative pleadings.

### TWIN CITY'S REQUESTS FOR JUDICIAL NOTICE

Twin City has requested that, pursuant to Rule 201 of the Federal Rules of Evidence, the Court take judicial notice of: (1) the parties' "Stipulation Regarding Authenticity of Insurance Policy; Exhibit 'A' ", filed on August 25, 2004, in this case; (2) Plaintiffs' "Complaint for Declaratory Relief; Summons," filed on June 27, 2003, in this case; (3) the "Third Amended Complaint; Exhibits 1 and 2; Summons; Certificate of Service," filed on July 1, 2004, in the Trustee Lawsuit; (4) the "Fourth Amended Complaint; Exhibits 1–6; Summons; Certificate of Service," filed on July 1, 2004, in the Trustee Entity–Only Litigation; (5) the "Complaint; Summons," filed on February 24, 2004, in the matter entitled *Value Recovery Group, L.P., as Assignee of the Federal Deposit Insurance Corporation, Receiver of Southern Pacific Bank v. KPMG, et al.*, Hawai'i First Circuit Court, Civil No. 04–1–0355–02 (GWBC); (6) the "Order Granting Plaintiff's Motion For Leave To Amend Complaint Filed March 23, 2004 and Plaintiff's

Further Motion To Amend Complaint Filed June 3, 2004," filed jointly on July 2, 2004, in the Trustee Lawsuit and the Trustee Entity–Only Litigation; and, (7) the parties' "Stipulation to Bifurcate Cross–Summary Judgment Motions," filed on August 17, 2004, in this case. Plaintiffs did not object to Twin City's requests or request that the Court take judicial notice of any additional documents. The Court GRANTS Twin City's requests for judicial notice.

### CONCLUSION

Having reviewed the papers submitted, the declarations and other evidence submitted, and the relevant law, IT IS HEREBY ORDERED THAT: (1) the Court GRANTS Defendant Twin City's Motion for Summary Judgment; and, (2) the Court DENIES Plaintiffs' Motion for Summary Judgment.

Additionally, the Court GRANTS Twin City's request for judicial notice in its entirety.

Finally, the Court instructs the Clerk of the Court to enter Judgment in favor of Twin City in accordance with this Order.

**IT IS SO ORDERED.**

limited partnership—does not involve insurance coverage.